**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

**v.**

**Robert Wayne BROWN, Appellee.**

**No. 7653.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 7, 1966.

Rehearing Denied Dec. 12, 1966.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Paul F. Ferguson, Alvin, Sam Lee, Angleton, for appellee.

NORTHCUTT, Justice.

This is a workman's compensation case where Texas Employers' Insurance Association, the insurance carrier, has appealed from a judgment rendered on a jury verdict awarding Robert Wayne Brown damages for an accidental injury sustained in the course of his employment with Ferrier Brothers, the insured employer. The parties will hereafter be referred to as they were in the trial court. Robert Wayne Brown will be referred to as plaintiff and Texas Employers' Insurance Association as defendant.

The accident here in question occurred on July 24, 1958, at approximately 10:00 o'clock a.m. and claim for compensation was filed with the Industrial Accident Board on January 5, 1965. It was plaintiff's contention that the reason he did not file his claim for compensation within the six months was because he thought his injuries were trivial and would not result in any disability until shortly before his claim was filed, and upon discovering that his injury was serious and permanent he filed his claim with the Board, and therefore he had good cause for delay up until the claim was filed.

It was defendant's contention that any incapacity plaintiff may have sustained had been or would become partial rather than total and any incapacity plaintiff might have sustained whether total or partial was temporary rather than permanent in its duration. Defendant further contended regardless of the contention of plaintiff or defendant, there was, in any event, a period of time during which the plaintiff had no total incapacity attributable to the 1958 accident and that there was a period of time during which plaintiff had no incapacity at all attributable to the 1958 accident. Defendant through its attorney denied under oath that plaintiff filed claim for compensation within six months period prescribed by the statute or that good cause existed for the failure to file same.

The case was submitted to a jury upon special issues. The jury found that plaintiff sustained an accidental injury on July 24, 1958, while in the course of his employment with Ferrier Brothers; that the injury was a producing cause of the incapacity of the plaintiff; that the injury was the producing cause of total incapacity to the plaintiff; that such total incapacity began July 24, 1958; was temporary and extended for a period of 118 weeks; that plaintiff received partial incapacity which began November 7, 1960, and was permanent; and that the average weekly wage earning capacity of the plaintiff during the period of such partial incapacity was $100 per week. Then the jury further found that the plaintiff believed until about the time that his claim was filed that his injury was trivial and that such belief prevented him from filing his claim up and until the time it was actually filed and that such belief constituted good cause for not filing his claim for compensation sooner than it was actually filed. Judgment was rendered in favor of the plaintiff for the sum of $5,146.91, and from that judgment the defendant perfected this appeal.

Defendant's first seven points of error deal with the plaintiff's failure to file his claim within six months after injury as provided for under Vernon's Ann.Civ.St. Article 8307, Section 4a. Defendant contends the court erred in overruling defendant's motion for instructed verdict and judgment non obstante veredicto founded on the delayed filing of plaintiff's claim for compensation in the absence of good cause

therefor; no evidence to sustain the jury finding that until about the time his claim was filed plaintiff believed his injury was trivial; no evidence to sustain the jury finding that a belief that his injuries were trivial prevented plaintiff from filing his claim until the time it was actually filed and no evidence to sustain the jury's findings that the plaintiff's belief that his injuries were trivial constituted good cause for not filing his claim for compensation sooner than it was actually filed. The defendant then presented the same contentions on the ground that the findings of the jury on these matters were so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

Plaintiff was injured on July 24, 1958, and was taken to a hospital in Dumas. He was in the hospital three or four days and then drove his car home and went back to work in about ten or twelve days. Plaintiff was nineteen years of age when injured. Since it was six years, five months and eleven days from the time of the accident until his claim for compensation was filed, we will not consider his age any further herein. We think the sole question here as to good cause being shown rests solely upon whether plaintiff was excused from filing his claim within six months until he was informed by Dr. James Albert Brown that he had a brain injury. To establish good cause for his delay in filing his claim for compensation plaintiff's pleadings were as follows:

"Plaintiff alleges that if he did not file his claim with the Industrial Accident Board of the State of Texas within six (6) months from the date of the injury described herein, then that good cause existed up until the time the same was filed, for the following reasons:

"The plaintiff thought that his injury was trivial and would not result in any disability until shortly before the claim was filed, and upon discovering that his injury was serious and permanent he contacted his attorney and immediately filed

his claim before the Board, and therefore he had good cause for the delay up until the time the claim was filed. In the alternative, plaintiff says that he was a minor at the time of his injury and was informed by his employer that he could file his claim for compensation at any future date if disability occurred, and plaintiff relied on his employer, its agents, servants, employees and representatives to process his claim, and this constituted good cause for failure to file the claim up until the time the same was filed."

Plaintiff testified the first thing he knew after the accident was next morning when a nurse came in to give him a "birdie bath" and he got up and took a shower. He worked and went to school from about ten days after the accident until the time of this trial in the district court. He continued to have severe headaches; could not concentrate; wanted to get away from everyone; and be by himself and all of this was different from the way he was before the accident. He knew his conditions were getting worse and more numerous. The following questions were asked the plaintiff and his answers were as follows:

"Q. All right. Now, Robert, after you saw the Hunt Oil company doctors who was the next doctor that you saw?

"A. I saw Dr. Stephens in Alvin, Texas.

"Q. Did you go to Dr. Stephens of your own volition?

"A. Yes, sir.

"Q. Is he a general practitioner?

"A. Yes, sir.

"Q. What specific ailments or complaints caused you to seek Dr. Stephens' help?

"A. I got to where I couldn't concentrate on anything, I would sit down to read and maybe one time I could and the next time I couldn't, I would pick up something rather quick

sometimes and sometimes I could spend hours on it. Everytime I would sit down and start to read I would fall asleep, I wanted to sleep all the time. Food got to where it tasted about the same. I thought it might be my eating habits because working shift work and everything why I thought it could be my eating habits which were erratic. So, I had a matabolism check run in which they take a blood sample and find out whether you do suffer from vitamin deficiencies and they found it normal as well as a 20–18 vision with my eyes, so it was neither of that.

"Q. Now, Robert, had the persistence of these symptoms that you had had since the accident of 1958 caused you to become alarmed about yourself?

"A. Yes, sir, at that time."

He went to see Dr. James Albert Brown, a neurologist, on November 16, 1964. Dr. Brown caused an electroencephalogram run on the plaintiff and told him he had brain damage. That was the first time plaintiff realized he was suffering from brain damage and was the first time he attributed his trouble to the accident.

■ In considering whether the finding that the plaintiff believed that his injuries of July 24, 1958, were trivial was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong, we must consider and weigh all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ Ordinarily, the question whether good cause exists for not filing a claim for compensation within six months after the occurrence of the injury is a question of fact. Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088; Texas Employers' Insurance Association v. Roberts, 135 Tex. 123, 139 S.W.2d 80 and other cases cited in those cases. Until Dr. Brown made an electroencephalogram and informed the plaintiff that he had a brain injury there was nothing to cause the plaintiff to attribute his trouble to the accident. We think the fact he continued to work under the circumstances and doctor's findings he was all right was sufficient for the jury to consider whether the plaintiff considered his trouble trivial. We overrule defendant's first seven points of error.

By defendant's points of error 8, 9, and 10 it is contended the court erred in overruling its motion for judgment non obstante veredicto addressed to the jury finding of a compensable total incapacity lasting 118 weeks; that there is no evidence to support the jury answer of 118 weeks as the duration of plaintiff's total incapacity and that the jury's answer of 118 weeks as the duration of plaintiff's total incapacity is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

■■ The plaintiff went back to work within ten or twelve days after he was injured. There will be no further consideration as to compensation for the ten or twelve days he was away from his job as that time is not material here. He had consulted three or four different doctors before consulting Dr. James Albert Brown and they had not found anything wrong with him. He had taken six or seven physical examinations for the Marine Corps and for different jobs and passed all of them. Plaintiff acknowledged that he had been passed physically in all of his tests and that Dr. Brown passed him physically. He further testified he was able to do his work and because of doing a good job he had been advanced to a higher scale. All through his testimony he testified he was able to do the job and never claimed he could not do his work. His boss had testified plaintiff was a good hand and did his work. In considering all of the record we conclude that as a matter of fact that the plaintiff was not totally and permanently

disabled. Plaintiff returned to work some ten or twelve days after his injury and had been able to do his work on different jobs for over six years and received good wages. There is nothing in this record to show he had lost any wages because of any disability to do his work. The Supreme Court of Texas in the case of Texas Employers' Insurance Association v. Roberts, supra, held that compensation is not provided for pain and suffering but for loss of wages. The evidence is clear and undisputed plaintiff's condition did not in a period of over six years between the injury and the trial prevent him from procuring and retaining regular well-paying employment in the same or better field of work he was engaged in prior to his injury.

Our Supreme Court has approved the definition of total incapacity as given in the case here. Texas Employers' Insurance Association v. Mallard, 143 Tex. 77, 182 S.W.2d 1000.

We have weighed and considered all of the evidence—that which supports the verdict and that which does not—and are of the opinion that the findings of the jury as to total incapacity was contrary to the instructions given by the trial court. The trial court here charged the jury that total incapacity did not mean absolute disability to perform any kind of labor, but was a person disqualified from performing the usual task of a workman in such a way as to enable him to both procure and retain employment, was totally disabled or incapacitated.

Under this record we are of the opinion, and so hold, that the finding of the jury that the plaintiff was totally incapacitated for a period of 118 weeks from July 24, 1958, is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. Texas Employers' Insurance Association v. Hawkins, Tex.Civ.App., 387 S.W.2d 469 (N.R.E.); Texas Employers' Insurance Association v. Norton, Tex.Civ. App., 278 S.W.2d 287 (writ dism.); Texas

Employers' Insurance Association v. Vineyard, Tex.Civ.App., 316 S.W.2d 156.

We are unable to see any evidence in this record to support the jury finding that plaintiff was totally incapacitated for 118 weeks from July 24, 1958, but should we be wrong in that, we are of the opinion, and so hold, that the jury's answer of 118 weeks as the duration of plaintiff's incapacity is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. We sustain defendant's tenth assignment of error that the jury's answer of 118 weeks as the duration of plaintiff's incapacity is against the overwhelming weight and preponderance as to be clearly wrong.

Since we are of the opinion that the case should be reversed and remanded, we will not consider defendant's other points of error as they may not arise during another trial.

Judgment of the trial court is reversed and remanded.