TEXAS EMPLOYERS INSURANCE ASSOCIATION V.
O. T. HAYWOOD

No. A-4422. Decided April 7, 1954.
(266 S.W. 2d Series 856)

*Crenshaw, Dupree & Milam,* of Lubbock, for petitioner.

The Court of Civil Appeals erred in not sustaining petitioner's objection to the prejudicial and improper argument of respondent's counsel which was an attack upon petitioner's witnesses and was of such a nature that an instruction from the trial court would not have cured or removed the harm caused thereby. Southwestern Greyhound Lines v. Dickson, 149 Texas 599, 236 S.W. 2d 115; Texas & N. O. R. R. Co. v. Wilkerson, 260 S.W. 2d 912; Porter v. Puryear, 153 Texas 82, 262 S.W. 2d 933 and Id 264 S.W. 2d 689.

*Bob Huff* and *J. H. Splawn, Jr.,* both of Lubbock, for respondent.

Since petitioner made no objection to the alleged improper and inflammatory argument of respondent it was at most harmless. Poe v. Texas Emp. Ins. Assn. 250 S.W. 619; Fambrough v. Wagley, 140 Texas 577, 169 S.W. 2d 478; King v. Federal Underwriters, 144 Texas 531, 191 S.W. 2d 855.

MR. JUSTICE CALVERT delivered the opinion of the Court.

We granted petitioner's application for writ of error to review rulings of the Court of Civil Appeals, 266 S.W. 2d 499, on points of error involving improper argument of counsel for respondent.

Respondent, a negro, as plaintiff in the trial court, sought to recover benefits under the Workmen's Compensation Law, Article 8306 Vernon's Civ. Stat., for a general disability alleged by him and found by the jury to be total and permanent in character.

In rebuttal or respondent's testimony that since his injury he was unable to turn his head from a fixed position, held throughout the trial, because of pain in his neck and that he had been able to do only a very limited amount of work for certain named employers, petitioner offered two negro witnesses who were flown from Austin to Lubbock for the trial and who testified that they had worked with respondent for two employers not named by him. The two witnesses were brothers by the name of Reynolds. One, William Reynolds, testified that respondent had worked for Shaw's garage in Austin which was owned by respondent's uncle and where the witness was shop foreman, and that he observed no abnormality in the manner in which respondent held his head and neck during that employment. The other, Richard Reynolds, testified that respondent had worked three and a half or four hours for another employer at work requiring heavy lifting.

Petitioner's complaint is that certain portions of the argument of respondent's counsel were highly inflammatory and prejudicial. The question was raised for the first time in petitioner's amended motion for new trial, filed nearly sixty days after the verdict of the jury was returned. The particular part of the argument deemed by us to be most inflammatory is that in which it was implied that the Reynolds brothers were not to be believed because they were negroes: "* * * why then didn't they bring the superintendent (of Shaw's garage) *or bring some white fellow that you could see and know was telling the truth?* * * * It looks to me like it would have been awful easy to have *brought some white fellows* that had their cars worked on *or somebody that you could believe.* Is that the way you would do it? That's common sense. I wouldn't fly a *couple of those yellow nigs in here and expect the jury to believe that kind of stuff.*"

■ Generally speaking, to entitle one to a new trial because of improper argument of counsel for the opposing party it must be

shown that objection was made and overruled at the very time the argument was made. Texas & N.O. Ry. Co. v. Sturgeon, 142 Texas 222, 177 S.W. 2d 264, 266; Wade v. Texas Employers' Ins. Assn., 150 Texas 557, 244 S.W. 2d 197, 200. The rule is a sound one. The basis for it is that offending counsel and the trial court should be afforded an opportunity to eliminate, if possible, the prejudice that may result from the argument—counsel by retraction and the court by instruction. As the Court of Civil Appeals correctly observed in this case, ordinarily a litigant will not be permitted to lie in wait, taking a chance on a favorable verdict and, being disappointed, complain of improper argument for the first time in a motion for new trial. It is only when the probable harm or the resulting prejudice cannot be eliminated or "cured" by retraction or instruction that a new trial will be awarded in the absence of timely objection. Texas Co. v. Gibson, 131 Texas 598, 116 S.W. 2d 686; Wade v. Texas Employers' Ins. Assn., supra.

■ As is pointed out in the Wade case, argument which is improper only because its nature is calculated to inflame the minds and arouse the passion of prejudice of jurors is usually regarded as being of the "curable" type. 244 S.W. 2d 200-201. See also Ramirez v. Acker, 134 Texas 647, 138 S.W. 2d 1054. But this is by no means an invariable and unbending rule. Basanez v. Union Bus Lines, Tex. Civ. App., 132 S.W. 2d 432, no writ history (appeal to national or racial prejudice). This Court has often reversed judgments because counsel used the medium of argument for getting before the jury new or different evidence, even though objection was not timely made. Floyd v. Fidelity Union Cas. Co., Texas Com. App., 24 S.W. 2d 363, rehearing denied, 39 S.W. 2d 1091; Robbins v. Wynne, Texas Com. App., 44 S.W. 2d 946. What matters it that the argument is of a particular type or falls into a particular category? The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Rules 434 and 503, Texas Rules of Civil Procedure.

■ The argument quoted above was improper. 41 Tex. Jur., Trial-Civil Cases, § 81, pp 807, 808; 41-B Tex. Jur., Trial-Civil Cases, § 267, pp 322-323; 78 A.L.R. 1440, et seq. It was an appeal to racial prejudice in language clear and strong. It was even more than that. The use of the term "yellow nigs" was a reflection on the ancestry of the witnesses, implying that they were

products of miscegenation. The witnesses had known respondent for two years or longer and were friends of the respondent; and aside from the fact that petitioner had paid their expenses to the trial and had agreed to reimburse them for any wages lost, a fact which they freely admitted, there was in the record not one whit of evidence that they either found pleasure in or stood to gain by giving testimony that ran counter to the best interests of a member of their own race. Certainly their color alone was not a badge of perjury. This Court has said that "Cases ought to be tried in a court of justice upon the facts proved; and whether a party be Jew or Gentile, white or black, is a matter of indifference." Moss v. Sanger, 75 Texas 321, 12 S.W. 619, 620. Race and color are also a matter of indifference in judging the credibility of witnesses. A jury of white men cannot be called on to determine the credibility of witnesses on the theory that the Caucasian race has a monopoly on the virtues of truth and veracity and people of other races, by virtue of their color, are inbred with dishonesty and perjury without implanting in the minds of the jurors the deepest and most ineradicable type of prejudice.

In our opinion the nature of the argument was so inflamma-tory and prejudicial that its harmfulness could not have been eliminated by either retraction or instruction, or by both. The fact that respondent was himself a negro may have tended to mitigate the harm but it did not cure it. The improper argument was reasonably calculated to and probably did result in an improper verdict and judgment and requires a reversal of the judgments of the courts below. Rules 434 and 503, Texas Rules of Civil Procedure.

The argument discussed above was but one of many deplorable incidents arising out of the conduct of counsel during the course of the trial. All of them were by no means contributed by respondent's counsel. An equal number were created by petitioner's counsel.

In cross-examination of respondent, petitioner's counsel asked if he had been in jail "on a charge of statutory rape" and does not deny that he knew when the question was asked that the charge was dismissed the morning after it was filed. When it developed during cross-examination of petitioner's medical witness that respondent had been attended by another doctor who did not appear as a witness, respondent's counsel said: "Well, that's the doctor I just sued for $135,000.00. You knew that, didn't you?" In his argument to the jury petitioner's counsel

chided respondent for not going back on the stand following the appearance of the Reynolds brothers to say "that these two colored men were telling you lies," and respondent's counsel replied that if respondent had been recalled as a witness he would have called "these yellow darkies another liar." Petitioner's counsel argued to the jury that "the truth" was that respondent had worked at Shaw's garage "for six months or better" when his own witness, William Reynolds, had specifically declined to testify to the length of the period of that employment and there was no testimony to the length thereof from any other source. Respondent's counsel argued that he didn't believe he "would treat a dog" as respondent had been treated by petitioner's medical witness and expressed the hope that neither he nor any of the jurors ever got "in the hands of a company doctor." All of these incidents, as well as certain others not here mentioned, were wholly out of keeping with proper courtroom conduct.

We realize that in the course of a hotly contested trial lawyers are apt, even prone, to "pull off the gloves"; but lawyers are officers of the court and proper and ethical conduct requires that there be limitations on the extent to which counsel may go in the injection of prejudicial and inadmissible matters, whether by way of cross-examination of witnesses or by way of jury argument. When these limits are transgressed a trial ceases to be a test of right and wrong by standards of law in a court of justice and becomes a "catch-as-catch-can, no-holds-barred" spectacle not unlike a modern wrestling match. It is not only the province but the duty of the trial judge, acting on his own volition if necessary, to prevent any such deterioration of judicial dignity.

The judgments of the courts below are reversed and the cause is remanded to the trial court. All costs of appeal are divided equally.

Opinion delivered April 7, 1954.