Mrs. Lizzie STOTT, a widow, et al.,
Appellants,

v.

HOUSTON LIGHTING AND POWER
COMPANY, Appellee.

No. 317.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 25, 1970.

Nick C. Nichols, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellants.

Perry O. Barber, Jr., Baker, Botts, Shepherd & Coates, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a wrongful death action arising from the death of Sam Stott some 76 days after he was involved in an automobile collision between the taxi which he was driving and a pick-up truck owned by Houston Lighting and Power Company and operated by its employee, Julius Kolar. Plaintiffs in the trial court were Mrs. Lizzie Stott, widow of the deceased and Mrs. Marie Miley, an adult daughter of the deceased. Plaintiffs perfect this appeal from a take nothing judgment rendered on the jury's verdict in favor of the defendant, Houston Lighting & Power Company.

The collision made the basis of this suit occurred in Freeport, Texas on September 17, 1965. The defendant's pick-up truck, driven by Julius Kolar was proceeding north on Pecan Street. At the intersection of Pecan Street and Broad Street there is a yield right-of-way sign in favor of traffic on Broad Street. Broad Street had no traffic control signs or signals at this intersection. Kolar stopped his pick-up truck in response to the yield sign on Pecan Street. Kolar looked to his right and saw the taxi a block and one-half down Broad Street. Kolar made a judgment that there was sufficient time to go through the intersection which he then started to do. Kolar proceeded into the middle of the intersection where the pick-up truck's motor died and the truck was brought to a complete stop for five to ten seconds. While the truck was moved forward another five room for a car to pass in front of it. The pick-up truck motor then started, the truck accelerated at a "pretty good" speed and the truck was moved foward another five to eight feet in the intersection when the collision occurred. The taxi driven by Sam Stott struck the right rear part of defendant's pick-up truck with sufficient force to turn it 180 degrees to a position facing the direction from which it had come.

Mr. Stott was treated by Dr. W. D. Nicholson, about 30 minutes following the accident. There were no external marks on Mr. Stott indicating injury from the accident but Mr. Stott appeared to be suffering pain in his chest and neck. Subsequent examination by Dr. Nicholson included an electrocardiogram which indicated Mr. Stott had at some prior time suffered a heart attack. Although Dr. Nicholson was fearful that Mr. Stott might be having a heart attack when he first saw him on September 17 and that he might have a heart attack at a later date, the doctor testified that no objective evidence was found which indicated that Mr. Stott actually suffered a heart attack on September 17. Dr. Nicholson informed Stott of his heart condition and advised him to see his regular doctor concerning it.

On October 12, 1965, Mr. Stott saw Dr. A. E. Minyard, an orthopedic specialist to whom he was referred by the plaintiff's attorney. Dr. Minyard discovered a compression fracture in Mr. Stott's neck vertebrae which he testified had been caused by the collision of September 17th. This compression fracture, although it did not interfere greatly with Mr. Stott's motor activity, was the cause of pain in the patient's neck and shoulders according to the medical opinion of Dr. Minyard. The drug Indocin was prescribed for Mr. Stott. Later, because the Indocin was not being tolerated too well, Dr. Minyard substituted the drug Librium for the Indocin. It is noted that the medical testimony in the record indicates that the drug Indocin is seldom used by persons with stomach ulcers due to the possibility of the drug causing internal bleeding. Mr. Stott was known to have had trouble with stomach ulcers.

On November 28, 1965, Mr. Stott, complaining of pain in the chest, saw Dr. Sears. It was Dr. Sears who treated Mr. Stott for the next four days and who, as the attending physician, listed "perforated ulser" (sic) as the cause of Mr. Stott's death on December 2, 1965. No autopsy was performed on Mr. Stott. The only

other medical testimony offered was that of Dr. Gene Burke, who reviewed Mr. Stott's medical history sometime after his death but prior to the trial. Dr. Burke testified that from the history before him that it was his medical opinion that Mr. Stott died of heart failure in part caused by the accident of September 17, 1965.

The case was submitted to the jury on special issues, the answers to which are summarized as follows: (a) Julius Kolar was not negligent in proceeding into the intersection at a time when such movement could not have been made safely. (b) Kolar did not make an improper (negligent) application of his brakes prior to the collision. (c) Kolar did not fail to yield the right of way to approaching traffic by entering into the intersection when approaching traffic was so close as to constitute an immediate hazard. (d) The Houston Power & Light Company gave Kolar a vehicle which had a susceptibility of dying. Such susceptibility was known or should have been known to the defendant. This act of entrustment was negligent and a proximate cause of the collision. (e) The collision was not the result of an unavoidable accident. (f) Sam Stott failed to yield the right of way to a vehicle legally in the intersection. This act was negligent and a proximate cause of the collision. (g) Stott failed to keep a proper lookout. This was negligence and a proximate cause of the collision. (h) Stott was not driving at a negligent rate of speed prior to the collision. (i) Stott suffered damage totaling $5,000. (j) The accident contributed to cause the death of Stott. (k) Mrs. Stott sustained a pecuniary loss of $20,000 due to the death of her husband. (l) Mrs. Miley, the daughter of Sam Stott, suffered no pecuniary loss due to the death of her father.

■ Plaintiffs' first five points of error are directed to the jury's finding that Stott failed to yield the right of way and failed to keep a proper lookout. Plaintiffs attack these findings as being "so against the great weight and overwhelming preponder-ance of the evidence as to be clearly wrong and unjust." When jury findings are challenged in such a manner it is the duty of the appellate court to examine the record as a whole considering all the evidence relevant to the findings so attacked. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126 (Tex.1959); Continental Bus System, Inc. v. Biggers, Tex.Civ.App., 322 S.W.2d 1, writ ref., n.r.e.

The record reflects that Stott's car was between a block and a block and a half away from the intersection at the time defendant's truck entered the intersection. There was nothing between the two vehicles to obscure either party's vision. Since Stott was found not to be proceeding at a negligent rate of speed (a finding that plaintiffs would scarcely wish to attack) the jury was justified in finding that there was sufficient time and distance during which Stott could and should have acted to avoid the collision. Stott's failure to so act is reflected by the complained of jury findings. There was testimony by Kolar that Stott neither slowed down nor attempted to alter his course during the time defendant's truck was stalled. This testimony finds corroboration in the fact that the only evidence of plaintiff attempt to avoid a collision was skid marks that began 39 feet from the point of impact and in the fact that Stott's vehicle still had enough momentum upon impact to impel defendant's truck 180 degrees pointing the truck in the direction from which it had come. These two tangible, physical facts support the jury's findings in this regard.

The jury could note that defendant's truck, after legally entering the intersection and stalling had only two courses of action open to it: (1) standing still, or (2) attempting to start the motor and move out of the intersection. Whichever action was then taken the jury could well find that the collision thereafter occurring resulted from Stott's failure to yield the right of way or from Stott's failure to keep a proper lookout, or both. Main v. Oliver, 394 S.W.2d 240, writ ref., n.r.e. We find suf-

ficient evidence in the record to support the jury's findings. Appellant's first five points of error are overruled.

■ Plaintiffs' sixth and seventh points of error are directed to the following statement made by defendant's counsel during jury argument:

"I feel a little bit sorry for Mrs. Stott in this connection, I think that she and Mr. Stott fell into the clutches of some lawyers who started to try to build a neck case out of the accident, and sent Mr. Stott to a doctor in Galveston who wasn't interested in treating him as a whole patient, wasn't interested in really trying to do what was right but interested in trying to help build, at the attorney's request, a damage suit, and unfortunately * * *."

Plaintiffs' counsel interrupted and objected to the jury argument in the following manner:

"I am required to object to that insinuation, there is no basis in the record or outside this record for any insinuation there has been any impropriety on the part of any of the attorneys or clients or any of the doctors involved, that is a terrible accusation and I object to it, and I want it in the record."

There was no response or comment from the trial court regarding the statement of either counsel.

Appellants strongly urge that the quoted jury argument was not only prejudicial, inflammable and incurable, but also that it connoted dishonest, unethical and unprofessional tactics on the part of the plaintiffs' counsel. It is appellants' contention that such argument caused an improper judgment. While we are not to be understood as condoning the quoted portion of such jury argument we cannot agree with the import urged by appellants. The argument must be examined in its proper setting and for the degree of prejudice flowing from it. Texas Employers' Ins. Ass'n.

v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 858, (1954).

To be reversible the jury argument must be an improper argument, Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, (Tex.1953), and also must be so harmful as to be incurable by objection and instructions from the bench that the jury should disregard the statement. Turner v. Turner, 385 S.W.2d 230, (Tex. Sup.1965); Texas Employers' Ins. Ass'n. v. Haywood, supra.

■ It is to be first noted that the objectionable portion of the argument appears in only one instance. The argument complained of was not theretofore or thereafter alluded to. There was no repetition of the argument. Cf. Magaline v. J. V. Harrison Truck Lines, Inc., Tex.Civ. App., 446 S.W.2d 920, writ ref., n.r.e. No other part of counsel's argument is complained of. The fact that such statement appears in only one isolated instance is not controlling but it carries some significance in this particular instance.

Here the cause of Mr. Stott's death was a hotly contested issue which was the subject of varied but valid medical testimony. The medical testimony was in harmony, however, on the clearly established danger of administering the drug Indocin to a person whose medical history reflected the stomach problems which Mr. Stott had. Counsel for plaintiffs had previously argued that the collision had caused Mr. Stott's death. The complained of argument is consistent with and based upon defendant's contention that Dr. Minyard treated Mr. Stott only in relation to a neck injury he may have suffered in the collision and that the patient's stomach condition was considered by the doctor only in relation to the administration of the drug Indocin. Appellants have called two cases to the court's attention, both of which held jury arguments similar to the one in the instant case to be prejudicial and reversible error. Cross v. Houston Belt & Terminal Ry. Co., 351 S.W.2d 84, writ ref., n.r.e.,

**368**

and Howsley & Jacobs v. Kendall, 376 S. W.2d 562, (Sup.Ct.1964). In each of these cases, however, the statements made by counsel in jury argument were found to be unsupported by any evidence. Such is not the instance in the case before this Court. The statement here made finds support in the evidence and bore upon a vital issue to be determined by the jury.

In addition, there is evidence in the record from which it may be inferred that it was a former attorney in plaintiffs' counsel's firm who referred Mr. Stott to Dr. Minyard. This factor bears no immunity from consideration by the jury. Further the special issue upon which the subject statement would have greatest impact was answered in favor of the plaintiffs. The jury found that the collision indeed did contribute to cause Mr. Stott's death.

■ The fact that the judge remained silent in the face of counsel for the plaintiffs' objection does not necessarily constitute a refusal to sustain such objection. Though counsel for plaintiff objected to the statement he concluded, " * * * and I object to it, and I want it in the record." No curative instruction was required. Neither at this point nor later did counsel further seek a ruling from the court on his objection. The objection was tempered even further in that counsel concluded by merely expressing that, " * * * I want it in the record." Immediately after the objection, in any event, defendant's counsel reacted affirmatively by beginning to discuss the cause of Mr. Stott's death in relation to the medical testimony concerning the drug Indocin and Mr. Stott's history of stomach ulcers.

■ It is the duty of this Court to determine whether or not the quoted statement in the jury argument led to the rendition of an improper verdict by reviewing the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115, (Sup.Ct.1951). Even if it be conceded that the argument was error, we do not conclude that it amounted

to such a denial of the right of appellant as "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Rule 434, Texas Rules of Civil Procedure; Travelers Ins. Co. v. Luna, 428 S.W.2d 885, (Tex. Civ.App.1968, no writ hist.); Southern Pacific Co. v. Hubbard, 297 S.W.2d 120, (Tex.Sup.1956); Aultman v. Dallas Ry. & Terminal Co., supra.

We must conclude that in reviewing the record as a whole there is no reversible error in the complained of statement. The judgment of the trial court is affirmed.