**MAPCO, INC., Appellant,**

v.

**Phillp A. JENKINS, et ux., et al., Appellees.**

**No. 8194.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 15, 1971.

Rehearing Denied Dec. 13, 1971.

tracts of land in Hutchinson County. The three proceedings were consolidated for trial. From a judgment entered on a jury's verdict adjudging the value of the easements and damages to the remainder of the tracts of land, appellant has perfected its appeal, assigning 40 points of error. The first 24 assignments are no evidence and against the greater weight of the evidence points; points 28 through 31 are improper argument points; and the other assignments concern the admission or exclusion of evidence.

Philip A. Jenkins and his wife, appellees, own and reside upon two of the tracts of land which are located in Section 120, Block 5–T, T&NO RR Co. Survey in Hutchinson County. The first tract is the north one-half of Section 120, and the second tract is the southwest one-fourth of the section. Both are cultivated and irrigated. The third tract involved is owned and resided on by Bertha Jenkins, appellee, and is the south one-half of Section 115, Black 5–T, T & NORRCo. Survey in Hutchinson County. Approximately the east 84 acres are in dry land cultivation, with the remainder in grass, and the land is farmed by Philip A. Jenkins. Each easement condemned is 50-feet wide. It extends 191.81 rods approximately diagonally across the east half of the first tract, and 194.97 rods approximately from the northeast corner to the southwest corner of the second tract. The easement extends 136.02 rods across the cultivated portion of the third tract from approximately the northeast to southwest corner. The easement is about one-fourth mile from the home of Philip A. Jenkins and wife, and approximately 300 yards from Bertha Jenkins' home.

Following the hearings before special commissioners, appellant deposited in the registry of the county court double the amounts of the awards made to appellees by the special commissioners and entered into possession of the easements. Upon

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Perryton, Marion Fallwell, Tulsa, Okl., for appellant.

Linn, Helms & Countiss, Richard N. Countiss, Spearman, for appellees.

REYNOLDS, Justice.

This appeal concerns three condemnation proceedings consolidated for trial. The judgment of the trial court is reversed and the cause is remanded.

Separate condemnation proceedings were initiated by Mid-America Pipeline Company, now MAPCO, Inc., appellant here, to secure easements for an underground anhydrous ammonia pipeline across three

---

1. The property involved in this proceeding is described in the record as being in both Block 5–T and S–T. For the purpose of this opinion we have used Block 5–T.

appeals to the county court, Philip A. Jenkins and his wife withdrew the amounts of the two awards made to them. Bertha Jenkins did not withdraw from the deposit the amount awarded to her, but has raised no issue as to appellant's right to secure the easement by condemnation.

Philip A. Jenkins testified to the farming problems occasioned by the installation of the pipeline, and to $16,500.00 of additional expenses and crop losses as a result thereof with respect to his two tracts of land; there is no testimony as to specific problems or additional expenses or crop losses on the third tract. He testified that the three tracts of land were worth $185.00 per acre before the condemnation and had been reduced $50.00 per acre in market value because of the easements. Two other witnesses—James H. Godfrey, presented by appellant, and J. L. Brock, presented by appellees—testified as valuation witnesses. It was Brock's testimony that the market value of the remainder of the cultivated land was reduced $50.00 per acre because of the easements. The testimony of Godfrey and Brock as to the market value of the lands before and after condemnation, and the jury findings, were:

**First tract: N/2**
**Section 120; 320 ac.**

| 3.67 ac. easement | Godfrey | Brock | Jury finding |
|---|---|---|---|
| Before taking | $ 1,200.00 | $ 1,468.00 | $ 1,480.00 |
| After taking | 600.00 | 183.50 | 1,387.50 |
| Easement value | $ 600.00 | $ 1,284.50 | $ 92.50 |
| **316.33 ac. remainder** | | | |
| Before easement | $103,300.00 | $126,532.00 | $126,520.00 |
| After easement | 101,850.00 | 110,715.50 | 118,612.50 |
| Damages | $ 1,450.00 | $ 15,816.50 | $ 7,907.50 |
| Total | $ 2,050.00 | $ 17,100.00 | $ 8,000.00 |

**Second tract: SW/4**
**Section 120; 160 ac.**

| 3.70 ac. easement | | | |
|---|---|---|---|
| Before taking | $ 740.00 | $ 1,480.00 | $ 1,468.00 |
| After taking | 200.00 | 185.00 | 1,376.25 |
| Easement value | $ 540.00 | $ 1,295.00 | $ 91.75 |
| **156.30 ac. remainder** | | | |
| Before easement | $ 31,260.00 | $ 62,520.00 | $ 62,532.00 |
| After easement | 30,510.00 | 54,705.00 | 58,623.75 |
| Damages | $ 750.00 | $ 7,815.00 | $ 3,908.25 |
| Total | $ 1,290.00 | $ 9,110.00 | $ 4,000.00 |

**Third tract: S/2**
**Section 115; 320 ac.**

| 2.51 ac. easement | | | |
|---|---|---|---|
| Before taking | $ 600.00 | $ 627.50 | $ 502.00 |
| After taking | 300.00 | 125.50 | 439.25 |
| Easement value | $ 300.00 | $ 502.00 | $ 62.75 |
| **317.49 ac. remainder** | | | |
| Before easement | $ 55,400.00 | $ 44,600.00 | $ 63,498.00 |
| After easement | 55,150.00 | 40,400.00 | 55,560.75 |
| Damages | $ 250.00 | $ 4,200.00 | $ 7,937.25 |
| Total | $ 550.00 | $ 4,702.00 | $ 8,000.00 |

Judgment was entered on the jury verdict, which was within the range of valuation testimony pertaining to the total amount for the first and second tracts, but a total of $3,298.00 more than any witness fixed the amounts with respect to the third tract. It is interesting to note that the jury found the value of the easement and the damage to the remainder equivalent to $25.00 per acre for each of the three different tracts.

Prior to trial appellant filed and presented to the trial judge a motion in limine. This motion sought, among other matters, an instruction to appellees and their counsel to refrain from referring to, or eliciting any testimony concerning, the unwillingness of appellees to sell appellant any portion of their property, and specifically the unwillingness of appellees to sell appellant the condemnation rights sought. The motion was denied. Thereafter, in appellees' opening statement, the jury was told that the pipeline on Mr. Jenkins' property was involuntary on his part and that he did not want to sell any part of his land or any rights on his land. Mr. Jenkins later testified that he was not trying to sell some of his land and he was not trying to get a pipeline across it. No objection was raised in either instance. Thereafter, the following occurred during Mr. Jenkins' testimony:

"Q. Well, let me ask you this. What would you take for this strip that they are taking away from you, they took it away from you before we got to a jury, what would you take for that strip out of the middle of your ground?

"MR. LEMON: Your Honor, I object to that as not being a proper question.

"THE COURT: Overruled.

"Q. What would you take for that strip out of the middle of your land?

"MR. LEMON: Your Honor, I object again to that as not being a proper question.

"MR. LINN: He opened it up. That's in line with the questions he's been asking.

"MR. LEMON: I would submit to the Court that merely asking a man his opinion on valuation does not open it up, and it does not give counsel the right to ask him what he would take for it. It's not a property (sic) test.

"THE COURT: Overruled.

"MR. LEMON: Note our exception.

"Q. What would you take for a 2 or 3 acre strip out of the middle of your land?

"MR. LEMON: Your Honor, may we have a continuing objection to this line of questioning?

"THE COURT: You may.

"A. Can I answer?

"Q. Yes.

"A. I wouldn't sell out of the middle. I might sell off a corner, but I wouldn't just sell a strip out of the middle, that just wouldn't be for sale at no price. It would have to be out of a corner or on the side or something."

In the opening jury argument, appellees' counsel stated:

"First, I would say to you that Mr. Jenkins and his wife, and his mother, who own this land, did not want to sell it; they weren't trying to sell their land, or any part of it.

" * * *

"Now, the difference with a pipeline like MAPCO is that they have the power of the law of the Federal Government to take property; they can take the property by the arm of the Federal law when people don't want to sell it. * * * What are these people, who didn't want to sell their land, entitled to get from this company?"

In his closing argument to the jury, appellees' counsel stated:

"First, he (appellant's counsel) would like you to believe that this poor company is just the most benevolent, big-hearted company that ever came down the line. You know, they put this valve over in a certain place to help this poor man, * * *.

" * * * Talk about preparation—they've had a man in an airplane all day taking pictures, they've put a $150.00 a day man on the stand, they've had three lawyers on the case, and no telling what else they've spent on it.

"Now, let's talk about justice. This man has had to go out and hire himself a lawyer, and he's not running $60.00 a ton fertilizer down a pipeline every day, and there's no telling how much they will run down that line if it last as long as that man says it will. They could run as much as 65 billion 700 million pounds of ammonia down that line if it lasts as long as they say it can. They are in the business for profit, and there's nothing wrong with that, but let me tell you what they can do. They could put a line right across your house. They could say, 'Mr. and Mrs. So-and-So, we've got a certificate here from the Federal Government and we are serving notice that we are going to build a pipeline right where your house is. Now, you've got so long to vacate'. You know what you can do? You can get you a lawyer and say, 'my house is worth so much, but I don't want to sell it'. They are going to come in with their teams of lawyers, because they have the money to pay them, and they are going to crush you just like they are trying to crush him. Now, he's a farmer and you're not, but that doesn't make any difference, it could be your house, too.

" * * *

"The last misleading thing that Mr. Lemon tried to tell you is that this is just fair market value immediately before and after the taking. Well, that's true, but part of your consideration of market value is what it has cost this man to farm his land, what it cost him in his yield, and what the land preparations were to his land, this is uncontroverted. And that $16,500.00 list plus whatever you think that land is hurt—well, let me put it to you in this way: If you had a house, you wouldn't want to sell just one room of it, would you? What would you take for your living room, or better still, your bedroom? Suppose you try to sell that house and somebody is looking at it, and you say, 'well, you can have the house, but we have to tell you that somebody else has a right to one bedroom. These people went into court and they have a right to come in, and they mess it up, and we don't know when they are coming in, but they have got to pay damages when they come in and mess up your house. You may have to hire a lawyer, because they didn't pay the last time, but you know, it doesn't hurt the rest of the house. Even though they have the right to come in you will enjoy the rest of the house'. It's exactly the same thing. Any time they come in and disrupt his operation they need to pay for it, and one of the times they have got to pay for it will be determined you (sic) now. When you look at this situation again, and his rights as a land owner and his operation, as opposed to their rights to make a profit, then I say that man has got to be paid and I say he's got a lot of money coming. It's not one fraction of what they will make over their operation, but he's got some money coming for his trouble and I say it's in the neighborhood of $30,000.00. You put in what you feel is the difference in value of the land and add that to what you think a buyer would take from that property when he was buying it, by looking at these pictures immediately after the land was condemned.

"They talked about other things, how good they are—they come on his land vi-

olating a civil law. They admitted on the stand that they came on as trespassers. Not all pipeline companies do that but this one admitted it. So, they need to pay this man for what has happened.

"They tried to tell you that this line is so safe; their own man said that he has seen them blow out to where you didn't have to dig them out because it blew out of the ground. Maybe that means nothing, but this man and his wife and family have got to live around that line. It probably never would blow up, but you would rather not have it close to your house, especially if you didn't want to sell the land for it in the first place.

"Well, there are various interests involved here and when you do (sic) to the jury room think about them carefully, because the next condemnation they condemn could be you and disrupt your life. And if you had all that trouble, you would want a jury to look at it very carefully."

No objection was interposed during the jury argument. After the jury returned its verdict and before the entry of judgment, appellant moved for a mistrial on the basis of improper argument. The motion was denied.

■ We have read the entire record and have considered the complained of testimony, statements and arguments in their proper setting in relation to the record. We have determined that the statements, testimony and arguments were improper and prejudicial. The only litigious issues before the jury were the market values of the condemned easements and the damages, if any, to the remaining lands. When two of the appellees withdrew their awards and the other appellee made no objection to the right of appellant to take the property, they assented to the taking and will not be heard to claim that the condemnor had no right to take their property. State v. Jackson, 388 S.W.2d 924 (Tex.Sup.1965). By the opening statements, testimony and ar-

guments, there was injected before the jury (1) the unwillingness of appellees to sell the rights sought to be condemned; (2) a contrast of the wealthy condemnor with the less affluent condemnees; (3) an inference that appellant was interested only in a profit at appellees' expense; (4) a plea that the jury should consider its verdict from the improper viewpoint of placing itself in the position of the condemnees; and (5) the information that the jury could apply an erroneous concept in arriving at the market value of the lands. Under the circumstances in this case, all of these types of improper statements, testimony and arguments have been held by our courts to be erroneous, but reversible only when such, considered in the light of the whole record, was reasonably calculated to cause such prejudice to the opposing litigant that the withdrawal or an instruction by the court, or both, could not eliminate the probability that such resulted in the rendition of an improper verdict and judgment. Texas Employers Ins. Assn. v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954).

■ Appellees contend that, in any event, when appellant made no objection to the opening statements and arguments, the right to complain on appeal was waived. This is the general rule, but it is valid only so long as the cumulative effect of the statements is not so prejudicial that an instruction by the trial court to the jury to disregard them would have removed the prejudice produced thereby from the mind of the jury. Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956). From our reading of the complete record, we conclude that the statements and arguments veered over the permissible perimeter to the cumulative extent that, even had timely objections been made and sustained, instructions from the trial court to disregard the improper comments could not have cured the prejudice produced thereby. In this context they were calculated to, and probably did, cause the rendition of an improper verdict and judgment. While coun-

sel should never remain silent when opposing counsel makes improper statements or arguments, he does not lose his right to complain thereof on appeal when, in the light of the entire record, the error of improper statements or arguments is incurable. Rule 269, Texas Rules of Civil Procedure, imposes upon the attorney making the argument the primary duty to confine his remarks to the record and abstain from improper comments, and next imposes upon the trial court the duty to prevent improper statements. If the court does not do so, then opposing counsel "may ask leave of the court to rise and present his objection." In the statements and arguments in this case there is that combination of both the evils of introducing purported evidence not in the record and appeals to passion and prejudice denounced in Southern Pacific Co. v. Hubbard, supra.

▪ Additionally, by its motion in limine, appellant sought to prevent the injection of prejudicial testimony and statements before the jury of appellees' unwillingness to sell the condemnation rights involved. The motion was proper and should have been granted, and any reference to such unwillingness should not have been permitted. The overruling of the motion in limine in itself, though erroneous, is not reversible error; it is only when the matters properly attempted to be excluded are in fact prejudicially injected over timely objection that reversal is warranted. Hartford Accident & Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup. 1963). When the trial court failed to exclude, upon proper motion, the improper references to appellees' unwillingness to sell, and admitted that testimony over objection, the jury could reasonable infer that it was proper testimony to support appellees' arguments that appellees were entitled to be paid on the bases that appellees did not want to sell, that appellant was wealthy enough to "crush" appellees as well as members of the jury should they be involved in a condemnation proceeding, that appellant was a big corporation moti-

vated by profit to appellees' detriment, and that the next condemnation might happen to the members of the jury if appellees were not well paid. Further, the jury was informed that it was permissible to add the amount of expenditures and crop losses to the damage to the land in arriving at a proper verdict. These statements and arguments do not find proper support in the record.

That these improper matters conveyed to the jury were reasonably calculated to and probably did result in an improper verdict is further manifested in the verdict itself. The jury verdict results in a diminution of $25.00 per acre in the market value of each tract of land. The jury fixed the value of each easement at a sum substantially less than the lowest value testified to, and then found the damage to the remaining acreage which, when added to the easement value, in each instance resulted in a reduction of $25.00 in market value for each acre in each tract because of the easement. The ensuing verdict, then, totals $3,298.00 more for the third tract than was testified to by any witness, and demonstrates the prejudicial effect of the improper statements, testimony and arguments. Southern Pacific Co. v. Hayes, 391 S.W.2d 463 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n. r. e.).

▪ Appellees suggest that should we find error exists as to any one tract, we should require a remittitur or sever the case as to that tract and affirm as to the other tracts. The verdict, of course, must be based upon and rest with the admissible evidence and not upon unwarranted measures of values. The record does not permit a determination that the improper statements, testimony and arguments permeated the jury's verdict only to the extent that such affected one or more tracts in some measurable amount.

In view of our disposition of this appeal, no useful purpose would be served in reviewing appellant's first 24 points alleging that there is no evidence to support the

jury verdict, or that it is against the greater weight of the evidence. The evidence and the predicate upon which it is based very well could be different upon another trial. Because of our remand, we make the following observations in connection with the matters complained of that may arise in the event of another trial.

Testimony of the landowner as to his intent to irrigate the third tract in the future is admissible, Rayburn, Texas Law of Condemnation, § 123, the complaint of the admission of such testimony being more properly directed to the weight rather than to its admissibility. There is no error in the trial court's refusal to permit appellant's witness, Godfrey, to testify to the comparison of sales of land in Hale County, a distance of some 150 miles from the land involved in this proceeding. Whether the Hale County property met the test of similarity is largely a matter within the discretion of the trial court and, under the testimony in the record, no abuse of that discretion is shown. Morgan v. State, 343 S.W.2d 738 (Tex.Civ.App.—El Paso 1961, writ ref'd n. r. e.) ; State v. Childress, 331 S.W.2d 230 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.). Neither do we find, under the record, any error in the trial court's excluding, as hearsay, Godfrey's attempted testimony, about what he had been told by a farmer with respect to repairs to the land. Furthermore, evidence of specific items of damage resulting from construction of the pipeline is admissible, not as the measure of damages, but as elements to enable the jury to arrive at the correct market value, so long as such items are related to and tend to affect the market value of the land. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936).

During the cross-examination of appellee Philip A. Jenkins, appellant's counsel asked his opinion of the market value of the lands. Appellees' counsel interposed the comment that appellant, in inquiring into this matter not covered in direct examination, would be bound by the witness' answer. Considerable argument on this point was made by both counsel to the court in the presence of the jury. The inquiry was proper; the position of appellees' counsel was erroneous; and the exchange reflected by the record should not have been permitted in the jury's presence.

We do not agree with appellant's contention that the valuation testimony of J. L. Brock should have been stricken. His qualification is a matter entrusted to the discretion of the trial court, City of Teague v. Stiles, 263 S.W.2d 623 (Tex. Civ.App.—Waco 1953, writ ref'd n. r. e.), and his qualification met the legal test set out in Rayburn, Texas Law of Condemnation, § 126. Appellant's complaint is more properly directed to the weight, rather than the admissibility, of the testimony. But we do agree that, under this record, Brock's testimony concerning insurance claims arising from the use of anhydrous ammonia was based on hearsay and should have been excluded. We further agree with appellant that Brock's testimony concerning the value of the natural gas tap should have been withdrawn on appellant's objection. The witness, when asked the value, replied, "I don't know, maybe a $1,000.00 a month." The witness was not shown qualified to give a value.

The remaining points of error assigned complain of matters pertaining to the subjects of the statements and arguments we have held to be reversibly erroneous, and need not occur on another trial.

Reversed and remanded.