# Supreme Court of Texas

No. 24-0290

In re Space Exploration Technologies Corp. and Lauren Krueger,
*Relators*

On Petition for Writ of Mandamus

**PER CURIAM**

In this negligence case, the trial court cited incurable jury argument as a ground for overturning a verdict awarding the plaintiffs $123,500 for injuries sustained in a low-speed automobile collision. But "[p]robable harm from improper jury argument is presumptively remediable by retraction or curative instruction," so "[i]ncurable argument is rare." *Alonzo v. John,* 689 S.W.3d 911, 912 (Tex. 2024). Here, defense counsel's argument was redressable by retraction or curative instruction if plaintiffs' counsel had so requested. A new trial is inappropriate for improper argument when the error was curable but the complaint was waived. Because none of the trial court's other cited reasons for setting aside the jury's verdict survive scrutiny, we conditionally grant mandamus relief and direct the trial court to withdraw its new-trial order.

**I**

Lauren Krueger, a Florida-based engineer with Space Exploration Technologies Corporation (SpaceX), was on a month-long work trip to support SpaceX's Starship project in Brownsville, Texas. While commuting to the project site from her hotel in stop-and-go traffic, Krueger rear-ended a Ford F-150, which then pushed into a Toyota Tundra in what all agree was a 7.5-miles-per-hour impact. The Tundra's driver and three passengers were also en route to the SpaceX site as employees of Ruiz Erectors, a subcontractor providing steel-erecting work.

Moments after the accident, a coworker from Ruiz Erectors came across the scene and found the men "shaken and sore." But they said they were "okay," and no one requested medical assistance. The Tundra was "drivable," but a caution light was on, and the driver was concerned about the brakes not working. While on scene, the coworker reported the accident to his employer at Ruiz Erectors. The employer called his attorney and then instructed the crew to see a doctor and to have the Tundra towed to a collision center for a repair estimate. The employer later explained that, in doing so, he "was just following [his attorney's] orders."

The crew members were examined at a nearby medical clinic the same morning. The men filled out intake forms, with one form stating "attorney is on it" and "not yet, will soon" in response to whether other doctors had been seen or any tests taken. The doctor examined the men and took x-rays, which showed some "degeneration" and "osteoarthritic changes" but "no significant acute abnormalities." The doctor cleared

2

the men to return immediately to work with some lifting restrictions. But instead of having the crew report to work, the employer arranged for their transportation to his attorney's office. At the office, the men signed paperwork and were sent to a chiropractor the same day.

The next day, the crew returned to work in the Tundra and continued to work when jobs were available. Thereafter, they received chiropractic and other medical treatment from doctors chosen by the attorney. As the employer acknowledged, he put the men "in touch with [his attorney]" and "they followed [the attorney]'s plan after that."

Around five months after the accident, Ruiz Erectors' subcontracting work at SpaceX ended. The next month, the Tundra driver and two of the passengers sued Krueger for negligence and SpaceX for vicarious liability. The plaintiffs sought more than a million dollars for medical expenses, physical impairment, and physical pain and mental anguish, although they later nonsuited most medical-expense claims. By that time, the original attorney was no longer involved, and a new law firm represented the plaintiffs. When the remaining Tundra passenger learned about the lawsuit, he was surprised and testified that it should not have been brought.

Before trial, the plaintiffs filed a motion in limine. The court granted the motion as to "any letters of protection relating to any guarantee of payment of any medical expenses out of the judgment in this case" but denied it as to "how [the plaintiffs] found their doctors or how they were referred to treating physicians." Plaintiffs' counsel also objected to the admission at trial of the nonparty passenger's deposition testimony. The trial court sustained the objection as to the nonparty

3

passenger's testimony about therapy-plan discussions with the original attorney but overruled it as to his testimony that the attorney picked the doctors.

Over a four-day trial, the plaintiffs presented their case that Krueger was negligent while on a "special mission" for SpaceX and requested a total of $3.75 million for their injuries. The main dispute at trial was the existence and extent of damages: whether degeneration—the general wear and tear on the bodies—caused the plaintiffs' pain or, as plaintiffs' counsel framed it, the men "were easier to hurt because of this degeneration, their bodies just didn't bounce back as quickly" and "that's why they're in pain, because of the crash." The defense countered with evidence that the treatment the plaintiffs received was not medically necessary as a result of this accident; rather, the plaintiffs "had decades of wear and tear on their bodies from the physical demands that their work put on them."

In closing arguments, both sides vigorously advocated for their clients. Plaintiffs' counsel asserted that SpaceX wants "a free pass" and "to make these gentlemen sound like liars" because it "thinks that [it] can get away with not paying." In response, SpaceX's counsel argued that "there was a lawyer-driven plan" "to manufacture an opportunity to cash in" when the plaintiffs realized Krueger was a SpaceX employee and the plaintiffs bore the burden of proving that "this lawyer-driven plan . . . [,] designed to create a shakedown[,] was valid." SpaceX's counsel then stated that the plaintiffs' employer had the Tundra towed at his attorney's instruction to "make this fender-bender look more serious than it was."

4

At this point, plaintiffs' counsel objected, asserting an "improper attack." Without ruling, the judge said, "Move on." SpaceX's counsel then continued with the theme that the plaintiffs were sent to "doctors assigned by the lawyer" to "create medical evidence with the long process of therapy." After arguing that there was no "special mission," counsel closed with "[t]he plaintiffs want you to award something because SpaceX has resources." Krueger's counsel spoke next, suggesting that $8,000 for each plaintiff might be appropriate damages.

In rebuttal, plaintiffs' counsel addressed the accusations. He told the jury that the original attorney had passed away and was "a good man," "not launching shakedowns and plots." While the jury deliberated, plaintiffs' counsel asked to put on the record that there was an "improper attack." Although counsel disclaimed any intent to move for a mistrial, he said "if it doesn't go well, I'm reserving my right to move for a new trial."

The jury found that (1) Krueger's negligence proximately caused the accident, (2) she was not acting in the course and scope of her employment with SpaceX, and (3) she was liable to the three plaintiffs for $73,500, $40,000, and $10,000, respectively. The trial court rendered judgment on the verdict, but the plaintiffs moved for a new trial. The court granted the motion, summarily stating that defense counsel's "incurable arguments . . . more likely than not caused the rendition of the subject verdict." SpaceX and Krueger then petitioned for mandamus relief, arguing that the new-trial order lacks a sufficient explanation for the ruling. The court of appeals denied the petition because (1) neither relator had alerted the trial court about the alleged defect and (2) the

5

court would have to improperly speculate about the arguments the trial court found objectionable. ___ S.W.3d ___, 2024 WL 1340854, at *4-5 (Tex. App.—Corpus Christi–Edinburg Mar. 28, 2024).

While the mandamus petition was pending in this Court, the trial court issued a thirteen-page amended order articulating three overarching reasons for granting a new trial. First, defense counsel's closing contained "inflammatory, highly prejudicial, and incurable jury arguments" that created the unsubstantiated impression that the plaintiffs and their counsel conspired to manufacture their damages with the physicians' help. Second, testimony that the employer's attorney referred the plaintiffs to their doctors was improperly admitted because those communications were protected by the attorney–client privilege and any probative value was substantially outweighed by the danger of unfair prejudice. Third, the jury "awarded manifestly low damages" for Krueger's negligence and the plaintiffs' injuries.

## II

A trial court may grant a new trial "for good cause," subject to mandamus review for clear abuse of discretion. TEX. R. CIV. P. 320; *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 298-99 & n.5 (Tex. 2023). But "disregarding a jury's verdict is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury." *Rudolph Auto.*, 674 S.W.3d at 302. "[T]o ensure that only *valid* reasons supported by the record underlie the new-trial order," trial courts must "reduce their rationales to writing." *Id.* at 300, 302. If the stated reasons are insufficiently specific or legally inappropriate—that is, legally invalid, meritless, or unsupported by the record—the order is an

6

abuse of discretion. *Id.* at 300. Applying that standard here, we hold that the trial court clearly abused its discretion in ordering a new trial because none of the reasons stated in the amended order withstands scrutiny.[1]

The primary reason given in the amended order—incurable jury argument—is insufficient to justify the strong medicine of a new trial in this case. To preserve error as to improper jury argument, the complaining party must timely object, secure a ruling, and request a retraction or curative instruction unless the argument is so egregious as to be incurable. *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008). Defense counsel's argument, even if improper, was not incurably so.

Incurable argument is rare. *See, e.g.*, *Alonzo*, 689 S.W.3d at 913; *Rudolph Auto.*, 674 S.W.3d at 310; *Living Ctrs.*, 256 S.W.3d at 681. Examples include "[r]epeatedly telling jurors that they would align themselves with Nazis if they ruled for the defense," "remarks of racial prejudice, unsupported and extreme attacks on opposing parties and witnesses, or accusing opposing parties of witness manipulation or evidence tampering." *Rudolph Auto.*, 674 S.W.3d at 311-12. Such

---

[1] The plaintiffs note that the court of appeals has not reviewed the amended order. Although we have concurrent mandamus jurisdiction, a party usually must first seek relief in the court of appeals. TEX. GOV'T CODE §§ 22.002(a)-(b), .221(a)-(b); TEX. R. APP. P. 52.3(e). But when a new-trial order is signed by a successor trial judge while a mandamus petition is abated in this Court, we review that order's validity without requiring the relator to return to the court of appeals. *See In re Cook*, 356 S.W.3d 493, 495 (Tex. 2011); *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 229 (Tex. 2008). For similar reasons, and in the interest of judicial economy, we conclude that SpaceX and Krueger's challenge to the amended new-trial order is properly before us.

7

arguments "strike[] at the very core of the judicial process," *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009), and "damage the judicial system itself by impairing the confidence which our citizens have in the system," *Living Ctrs.*, 256 S.W.3d at 681.

Defense counsel's argument falls short of that high threshold. References to a "lawyer-driven plan" and "doctors assigned by the lawyer" were grounded in evidence adduced at trial without objection. *See In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 761 (Tex. 2013) (noting that "any evidence in the record is fair game" for closing argument). The same goes for counsel's remark that the attorney instructed that the truck be towed to make the accident "look more serious." To the extent the ascribed motive is not reasonably inferable from the evidence, a curative instruction would have sufficed to address any impropriety. *See Living Ctrs.*, 256 S.W.3d at 681 ("Not all personally critical comments concerning opposing counsel are incurable.").

Certainly, defense counsel used impassioned and loaded rhetoric, such as "shakedown," "lawyer-driven plan," "manufacture an opportunity to cash in," and "create medical evidence with . . . therapy." However, in *Standard Fire Insurance Co. v. Reese*, we held that similar language in a jury argument was curable, even if improper. 584 S.W.2d 835, 840-41 (Tex. 1979). There, counsel for an insurance company, to support its theory that the plaintiff incurred unnecessary medical charges, argued to the jury that (1) plaintiff's lawyer sent the plaintiff to a specific doctor, driving by "a thousand doctors" on the way, which indicates "a sham or a plot"; and (2) additional treatments by a therapist in that same doctor's office "for about six or eight weeks" were part of a

8

plan to "build those medical bills up real high" because "[t]he higher the medical bills, obviously he has got to be hurt," which "will look good in front of a jury." *Id.* at 836. Although we acknowledged the hyperbolic and potentially inflammatory language, we concluded it was not like those "exceptional instances" of incurable argument. *Id.* at 838, 840 (citing *Tex. Emps.' Ins. Ass'n v. Haywood*, 266 S.W.2d 856, 858-59 (Tex. 1954) (appeal to racial prejudice); *Sw. Greyhound Lines, Inc. v. Dickson*, 236 S.W.2d 115, 119-20 (Tex. 1951) (repeated use of abusive and inflammatory epithets against a party and her witnesses in disregard of objections); and *Howsley & Jacobs v. Kendall*, 376 S.W.2d 562, 566 (Tex. 1964) (unsupported charge of perjury)). Instead, we found it akin to *curable* arguments that, for example, "left the inference that plaintiff's counsel conspired with plaintiff to bring the suit for some malicious or fraudulent purpose." *Id.* (citing *Ramirez v. Acker*, 138 S.W.2d 1054, 1056 (Tex. 1940)). So too here.

Even so, the plaintiffs assert that curability is a preservation-of-error issue for direct appeal but "has no bearing" on whether the trial court may grant a new trial. For some new-trial reasons, that may be true. *See, e.g., Rudolph Auto.*, 674 S.W.3d at 303 (explaining that error preservation is not necessary for a trial court to grant a new trial based on an irreconcilable verdict because that court has a legal duty to harmonize jury findings, if possible, and render a reliable judgment). But for curable argument, "ordinarily a litigant will not be permitted to lie in wait, taking a chance on a favorable verdict and, being disappointed, complain of improper argument for the first time in a motion for new trial." *Tex. Emps.' Ins.*, 266 S.W.2d at 858. As

9

a result, a party generally must obtain a ruling on a timely objection for curable jury argument to support a new trial. *Cf. Rudolph Auto.*, 674 S.W.3d at 302, 312-13 (noting that the trial court's "special vantage point" might make a difference in distinctive cases where "argument that is not inherently incurable may prove incurable in a particular trial").

The plaintiffs here failed to do so. Instead of requesting a curative instruction or a ruling on his objection, plaintiffs' counsel employed rebuttal to bolster former counsel's character and engender sympathy for his passing. And rather than moving for a mistrial, counsel expressly disclaimed such action, choosing to submit the case to the jury. Only when this strategy failed did counsel move for a new trial. This was too little, too late. Overturning a jury verdict—a consequential act of constitutional import—cannot rest on so thin a reed as what transpired here.[2]

---

[2] While we recognize that "extravagant and ill-considered statements are often made" in "the heat of trial," we do not condone inflammatory or prejudicial rhetoric. *Younger Bros. v. Myers*, 324 S.W.2d 546, 550 (Tex. 1959); *see* TEX. R. CIV. P. 269(e) (strictly limiting permissible argument "to the evidence" and "arguments of opposing counsel" and admonishing that "personal criticism by counsel upon each other shall be avoided . . . and promptly corrected as a contempt of court"); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.02 ("Fairness in Adjudicatory Proceedings"); *Tex. Emps.' Ins.*, 266 S.W.2d at 859 ("[L]awyers are officers of the court and proper and ethical conduct requires that there be limitations on the extent to which counsel may go in the injection of prejudicial and inadmissible matters."). When this occurs, opposing counsel may object and request a curative instruction. Beyond that, trial courts can, and should, "supervise the scope of the arguments of counsel" at trial. *City of Dallas v. Andrews*, 236 S.W.2d 609, 611 (Tex. 1951); *see* TEX. R. CIV. P. 269(e), (g) (stating that the trial court, as supervisor of jury argument, need not wait for an objection to correct a violation of argument rules).

Faring no better is the amended order's second stated reason: the admission of evidence that the plaintiffs were referred to their doctors by their attorney. As to this ground, the amended order notes that the trial court "reconsider[ed] certain evidentiary rulings" that "improperly admitted" this evidence and "this was error that caused the rendition of an improper judgment." This rationale contradicts the record because evidence about the attorney's referrals was admitted at trial without any objection or ruling on admissibility. *See Toyota Motor Sales*, 407 S.W.3d at 759 (merely articulating specific and appropriate reasons for a new trial is insufficient when "the record squarely conflicts" with the expressed reasons). Two of the plaintiffs testified that the attorney selected their doctors, and their employer further confirmed that the plaintiffs followed the original attorney's "plan."

The amended order cites the trial court's rulings on the plaintiffs' motion in limine and their objection to the nonparty passenger's testimony on the lawyer's doctor referrals. Neither suffices. First, a motion in limine "does not preserve error on evidentiary rulings because it does not seek a ruling on admissibility." *Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 n.3 (Tex. 2015). If evidence is thereafter admitted at trial without objection, any error is waived and is not a valid basis for a new trial. *See Toyota Motor Sales*, 407 S.W.3d at 760-61. Second, the testimony cited in the amended order was cumulative of other evidence establishing the same facts without objection. Even if the trial court improperly admitted cumulative testimony, which we do not decide, any error was "likely harmless." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 165 (Tex. 2015); *see Rudolph Auto.*, 674 S.W.3d at 309 n.16 (noting

11

that our precedent involving new-trial orders repeatedly references Rule of Appellate Procedure 44.1's harmless-error standard); *cf. Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010) (holding that newly discovered evidence supports a new trial only if it "is not cumulative" and "would probably produce a different result").

Finally, the amended order asserts that a new trial is warranted because the jury "awarded manifestly low damages." *See* TEX. R. CIV. P. 320. But nothing in the order explains *how* or *why* the $123,500 award is too small, let alone *manifestly* so. *See Rudolph Auto.*, 674 S.W.3d at 305-06 (requiring the order to explain "*how* any evidence shows the jury's answers were so far astray that the verdict could not be regarded as anything but manifestly unreasonable" and "why no rational jury could have exercised its discretion as this jury did"). When that happens, we either (1) compel the trial court to redraft the order to elaborate on the reasoning or (2) order the court to render judgment on the jury verdict if the record shows no valid basis for the stated reason. *Compare Toyota Motor Sales*, 407 S.W.3d at 762 (ordering the trial court to withdraw its new-trial order and render judgment on the jury's verdict), *with In re United Scaffolding, Inc.*, 377 S.W.3d 685, 690 (Tex. 2012) (ordering the trial court to redraft an ambiguous new-trial order because the partial mandamus record did not support rendition). In this case, we must do both. Although the mandamus record shows no valid basis to support the stated reasons for a new trial against SpaceX, it lacks documents critical to determining whether the damages awarded against Krueger were manifestly too small.

"[W]hen supported by the evidence, awarding (or not awarding) damages is a classic question well within the jury's discretion, as the jurors alone must assess the credibility of the witnesses and the weight to afford their testimony." *See Rudolph Auto.*, 674 S.W.3d at 306-07. However, as both sides note, the mandamus record lacks approximately 2,400 pages of medical records admitted as plaintiffs' trial exhibits. Although these exhibits are not relevant to all the issues presented, *see In re CG Searcy, LLC*, 687 S.W.3d 725, 726 (Tex. 2024) (holding that irrelevant or immaterial exhibits "need not be included in the mandamus record"), they may be relevant to whether the jury's $123,500 damages award is manifestly too small. Without these exhibits, we cannot determine that the trial court had "no valid basis" to reach that conclusion. *See United Scaffolding*, 377 S.W.3d at 690 (refusing to direct the trial court to render judgment on the verdict when the mandamus record was incomplete (citing TEX. R. APP. P. 52.7)).

The trial court must therefore redraft its order to elaborate on the reasoning for this remaining ground with reference to the evidence. We trust that by reducing its reasoning to writing, the trial court will have "a further chance to confirm that truly proper and sufficiently weighty reasons underlie the new-trial order." *See Rudolph Auto.*, 674 S.W.3d at 300. But because none of the stated reasons warrants a new trial on the jury's finding that Krueger was not acting in the course and scope of her employment with SpaceX, the remaining new-trial ground—if supported by the record—applies only to the claims against Krueger. Thus, the redrafted order should be limited to Krueger, and the trial

13

court must render judgment on the jury's verdict as to SpaceX.  *See* TEX. R. CIV. P. 320 (authorizing a new trial as to a separable part only).

**\*   \*   \***

Because the reasons stated in the amended new-trial order do not support a new trial, the trial court abused its discretion.  Without hearing oral argument, s*ee* TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief and direct the trial court to vacate the amended new-trial order, render a take-nothing judgment in SpaceX's favor, and redraft its new-trial order as to Krueger.  We are confident the court will comply, and our writ will issue only if it does not.

**OPINION DELIVERED:** June 27, 2025

14