I. E. McNEIL, Appellant,

v.

Betty Moore CURRENT et vir, Appellees.

No. 15907.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 22, 1972.

Rehearing Denied Aug. 31, 1972.

Schlanger, Cook & Cohn, Joel W. Cook, Houston, for appellant.

Talbert, Giessel & Stone, Alice Giessel, Houston, for appellees.

PEDEN, Justice.

Personal injury suit arising when an automobile being driven by defendant Mrs. Current struck the plaintiff's Volkswagen from the rear while he was stopped behind other stopped vehicles in the center lane (of three) on the downward slope of an overpass on the inbound portion of the Gulf Freeway on a clear, dry afternoon. The impact propelled the Volkswagen into the car ahead of it and into the path of a car in the left-hand lane; it also struck the Volkswagen.

In response to the special issues submitted, the jury did not find from a preponderance of the evidence that Mrs. Current 1) failed to keep a proper lookout or 3) failed to apply her brakes as a person using ordinary care would have done. Although not required by the instructions to answer the two proximate cause issues accompanying those two primary negligence issues, the jury also answered them "We do not." The jury found $7000 in damages to the plaintiff for past pain, anguish and loss of earnings plus $600 in past medical expense. No contributory negligence issues were submitted to the jury.

The appellant contends by a point of error that the jury's answer to Special Issue No. 1 is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

We have examined the entire record. We think no useful purpose would be served by a detailed review of all of it. Much of the evidence concerned the distance between the summit of the overpass and the point of impact.

Only four witnesses testified in this case: Dr. McNeil and Mrs. Current, who were the drivers of the two vehicles and the only witnesses to testify to the collision, plus a photographer and a medical doctor who had treated the plaintiff (appellant).

Dr. McNeil fixed the place on the freeway where the collision occurred by his observation that when he afterwards walked directly away from the freeway to an ambulance on a parallel service road he remembered passing a signal box. Its location is shown by photographs to be near the bottom of the downward slope.

There was evidence that Dr. McNeil suffered a brain concussion in the accident and was temporarily unconscious before walking to the ambulance.

The photographer testified that some months later he stood beside the freeway even with the signal box and Dr. McNeil walked back up the walk beside the freeway, in the direction from which Mrs. Current had been coming, until he reached a point where only the upper half of his body was visible to the photographer. They measured the distance between them and found it to be about 561 feet.

■ Mrs. Current's estimate as to speeds and distances were, admittedly, inexpert. She testified that she was driving about 35 miles per hour when she got to the top of the overpass. Then, although she had been looking straight ahead, for the first time she could see cars ahead of her in her lane. She said they had their brake lights on so she knew they were stopped. She said she applied her brakes but was unable to stop until about the time she hit McNeil's car. In her estimation she traveled about fifty feet after she saw the cars before she hit his. However, a party is not necessarily bound to a fact which he admits only by way of opinion. De Winne v. Allen, 154 Tex. 316, 277 S. W.2d 95 (1955).

■ One of the questions under Special Issue No. 1 is whether the plaintiff discharged his burden of proving by a preponderance of the evidence that the accident occurred at a point where visibility from the rear was unobstructed for such a distance that the defendant could have seen the stopped cars appreciably sooner than she did. The jury was also entitled to consider the character of lookout ahead kept by a person of ordinary prudence on a fairly busy freeway.

One of the photographs in evidence was taken through the windshield of a car that apparently was approaching the summit of the overpass. It shows several cars ahead of it, at least one of which seems to have passed the summit. It appears that visibility ahead from where the picture was taken was considerably more than 50 feet.

We gather from this picture and from some of the others that the summit of the overpass is a relatively gentle curve rather

than an abrupt peak, but we cannot say from the pictures and other evidence how far a driver approaching the summit of the overpass can see a car on its downward slope.

A medical doctor who treated the plaintiff-appellant testified that when his patient related the circumstances of the collision, he said "his car was struck from the rear by a Cadillac driven by a lady who did not have a chance to slow down by applying her brakes."

It was shown that before Dr. McNeil stopped his car, the Mustang ahead of him was not stopped in time to avoid hitting the car ahead of it, but that Dr. McNeil was able to stop without hitting the Mustang.

Dr. McNeil testified that after the accident and before measurements to the signal box were taken, it was his opinion that the point of impact was between 100 feet and 300 feet from the summit of the overpass.

■ We conclude that the jury's answer to Special Issue Number One was not so contrary to the great weight of the evidence as to be clearly wrong.

■ We also overrule appellant's point of error based on a contention that he was entitled to favorable findings on the liability issues (number 1 and number 3) as a matter of law. On examining the evidence and inferences tending to support these findings and disregarding all evidence and inferences to the contrary, we find no merit to the point of error.

Another of the appellant's points of error is that the trial court erred in overruling his motion for new trial complaining of the unsworn testimony of counsel for the appellees.

The jury argument in question was as follows:

"    .    .    .    .

"The man had a sprain, I agree, but I can't go this other terrible loss of earnings.

" 'I can't write a book any more because of this accident.'

"Maybe it would have impressed me if I hadn't heard it before, but maybe you can understand my shock, my utter shock, when I walked into this courtroom and heard what I had heard about fifteen years ago. I was a young lawyer, then, fresh from law school, trusting, believing, like Will Rogers once said—I used to say it to myself—I hope I still can, 'I have never met a man I didn't like,' but now I have to add a correlary; I sure like some better than others.

"Maybe I would have been impressed if I hadn't heard it before.

"I got fooled the first time—guilty—put it down to youth and inexperience, but I will not buy it a second time. I pray you on damages, be fair. Even though Dr. MacNeil has not been fair with us, we must yet be fair to him. I don't believe in revenge. I never have. It never ends anything. I don't want the last lick. I want to be fair to people who are unfair to me. Put it down, he had a sprain. Award him the medical expenses, though I might question some. Put them all in, and on damages, award what is fair and reasonable for a sprain for which he was under treatment for three months. Put it down. Be fair with him. No revenge is being sought. I disclaim it. It's not a worthy goal."

Prior jury argument by the appellant's attorney about him was, in part:

"There is no real controversy about what Dr. MacNeil did before the accident. I submit him to you as an interested person, one who has an interest in this lawsuit, but as a person having some credibility from simply the fact of where he is and what he does. He is a teacher, a college professor, a writer of accounting books, one who is called on to consult about technical problems in accounting, a man of substantial capacity to earn money, respected in those places where he is employed, where he carried on his business.

"And when he comes down here to court, he doesn't change his stripes or become a crook or liar, and I submit to you that as a person, he is not one who should be disbelieved unless there are strong reasons to think he was not telling the truth."

The only evidence which might have been the basis for the argument complained about was part of the testimony of the appellant on cross-examination. He admitted that he had been involved in a 1956 accident in Fort Bend County in which he received both neck and shoulder injuries and that his wife had been injured in the same accident. He said he did not recall the details of the allegations of the legal documents filed but that he did remember that Mr. Giessel defended that suit.

On re-direct examination, appellant testified that in the 1956 accident he had a broken bone in his left wrist, a severe blow to the forehead and injuries to his back, neck and right leg. He has completely recovered from the effects of that accident. It took about seven months for the wrist to recover. That his suit for damages from the 1956 injury was settled without going to trial.

Counsel for the appellant did not object to the jury argument in question, did not ask for a jury instruction and did not move for a mistrial. In his closing argument he replied to it by saying that Mr. Giessel had said "Don't worry about Dr. McNeil. I don't like him anyway. He is some kind of a liar and a crook." Appellant's counsel argued that Mr. Giessel was merely giving his judgment of the matter when he was not under oath and pointed out that in the special issues the judge was asking what the preponderance of the evidence showed, not what the lawyers think. He later added: "I say to you that this is a respected man in the community in which he lives."

■ We must decide whether the improper jury argument of counsel for the appellees was so prejudicial that its harmful effect on the jury could not have been cured by an instruction to the jury by the trial judge to disregard such argument. If so, the argument was an incurable one, and the appellant did not waive the error by failing to object to it. Otis Elevator Co. v. Wood, 436 S.W.2d 324 (Tex.1968).

■ The distinction between curable and incurable improper jury arguments has always been one of difficult application. In a general sense, most improper argument is the same in that it appeals, whether by passion, the suggestion of imaginary testimony or otherwise, to something other than the testimony in the case. Wade v. Texas Employers Ins. Assn., 150 Tex. 557, 244 S.W.2d 197 (1951).

■ The true test in determining whether an improper argument was curable is the degree of prejudice flowing from the argument; whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court or both, could not eliminate the probability that it resulted in an improper verdict. Texas Employers Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954).

■ The appellate court must determine from the entire record in the case whether the nature of the improper argument was such that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953).

The jury argument complained of amounted to unsworn testimony by the attorney for the appellee that when Dr. McNeil said "I can't write a book any more because of this accident," the attorney was shocked to hear "what I had heard about fifteen years ago," that he had been fooled before, that he will not buy it a second time, and that Dr. McNeil has not been fair with him. This amounted to the

attorney's informing the jury, outside of the record, that after the 1956 accident Dr. McNeil had claimed that he couldn't write a book any more and that this claim was false.

We overrule the point. The argument was improper and should not have been made, but we do not believe that it was incurable. When confronted with an improper jury argument, opposing counsel has to make one of a trial lawyer's immediate difficult decisions. Here appellant's counsel chose to answer the argument himself rather than ask the trial judge for an instruction. He apparently decided that the matter was not so prejudicial that to object would merely emphasize it, and we agree.

Appellant has also raised a point of error concerning certain other jury arguments made by appellee's counsel, none of which were objected to. We have examined each of them and we hold that each was of the type that is held to be curable.

Affirmed.