TRANSPORT INSURANCE COMPANY,
Appellant,

v.

Earl Lee KENNON, Appellee.

No. 7340.

Court of Civil Appeals of Texas,
Beaumont.

Sept. 21, 1972.

Rehearing Denied Oct. 12, 1972.

Benckenstein & Norvell, Beaumont, for appellant.

Waldman, Smallwood, Johnson & Rafes, Alvin Wiggins, Beaumont, for appellee.

STEPHENSON, Justice.

This is an action brought under the Workmen's Compensation Law. Trial was by jury and judgment was entered for plaintiff upon the verdict. Plaintiff recovered judgment for total and permanent incapacity. The parties will be referred to here as they were in the trial court.

 Defendant's first two points of error are that there is insufficient evidence to support the jury finding that plaintiff's total incapacity was permanent and that such finding is contrary to the great weight and

preponderance of the evidence. In passing upon these points, we consider the entire record.

The undisputed evidence showed the following: That plaintiff was thirty-five years old at the time of injury and thirty-seven at the time of trial. He lived in Vidor with his wife and four children, all of school age. He had worked for Red Ball Motor Freight Company since October 8, 1956, and was still so employed at the time of the trial. Truck driving had been his primary work all of his life. He was a pickup and delivery driver in the City of Beaumont from the time he was employed until January 1971, which was until about eleven months after the date of his injury. On that date, plaintiff became classified as a hostler and his duties were to check the fuel on the trucks, connect the tractor and trailer, and back up the tractor-trailer. Plaintiff was injured February 3, 1969, while loading his truck when a drum weighing about 109 pounds fell backward on him. His employer sent him to Dr. G. B. Stephenson and he was hospitalized from February 4 to February 14, 1969. He returned to work about seven weeks later.

Plaintiff gave the following testimony: As a pickup and delivery driver, his work required lifting, stooping and bending. He never had any difficulty doing that job before this injury and had been doing it continuously since 1956. When he fell backward with the 109 pound drum on top of him, he hurt the lower part of his back. He reported his injury to his superior who laughed and told him to work it out. He tried to continue with his work but was unable to unload his truck and was sent to the doctor. The doctor was unable to get him a hospital room and sent him home with some pain pills. The next day he entered the hospital where he stayed for ten days. That doctor prescribed a back brace which he had continued to wear. He has remained on the job for the same employer and has missed a lot of time because of his back. He has difficulty with his back every day. When the pain gets too bad, he has to take off from work. He was fired one time for taking off too much time but was reinstated following an arbitration hearing. He saw Dr. Stephenson two or three times after he was discharged from the hospital and was told to do as little as he could and let the other men do the picking up. He went to a chiropractor who gave him fifty-five treatments. He also saw Dr. Copeland in Silsbee and Dr. Oates in Houston.

Dr. James R. Oates testified as follows: His specialty is physical medicine and rehabilitation. He has special training and fifteen years of experience in the operation of an electromyograph which is used for testing nerves and muscles. There are approximately twenty doctors in the State of Texas qualified to read these machines. Plaintiff gave the doctor a lengthy history and was then examined. He found two areas in the center of plaintiff's lower back which were tender. He found localized inflammation and muscle spasm in the right muscles of the back at the level between the sacrum and the last movable back bone. He then found "[i]nflammation of one or more of the nerve root which, after exiting between the spinal cords in the back bones, join together to form the sciatic nerve." He checked that area of plaintiff's back because he found objective signs suggesting nerve damage in the lower back. He had found the left leg to be one-eighth of an inch greater in size than the right even though plaintiff is right-handed. He gave plaintiff the straight leg raising test and found on the left side that plaintiff suffered an abnormal pain in the lower back which is suggestive of nerve root type pain. He diagnosed plaintiff's condition to be one of nerve root damage in his lower back caused by a rupture or protrusion of a disc caused by the accident described and here sued upon. He later tested plaintiff with the electromyograph. He checked the gastrock, anteriotibial, extensor digitoral brevis, and abductor digital minin podis mus-

cles and found damage to the nerve supplies of all of them but one and his diagnosis was that plaintiff had damage on both sides of his lower back to the fifth lumbar nerve root. Those tests were made by injecting needles into those muscles and picking up the impulses inside those muscles. He stated his prognosis to be that plaintiff's "difficulties are going to continue for a prolonged and indefinite period of time which could well include their being permanent." He stated that in his opinion plaintiff could not continue the type of employment requiring stooping, lifting and bending. That picking up heavy objects would aggravate his condition. That plaintiff will continue to lose time from his work because of this injury. That there is no specific treatment known for this type nerve damage. That any employer who wanted to employ a man who was able to do all of the usual duties of a truck driver on a full time basis would release plaintiff from his work.

The deposition of Dr. Sam Copeland was introduced in which he stated his diagnosis of plaintiff to be a low sprain of a ligamentous type with incomplete resolution of the same and a possible nerve root irritation in the L3–L5 area. He stated the plaintiff was not able to perform physical labor at the time he last saw him (November 11, 1970). That plaintiff would likely have some improvement to the point where he would be an estimated twenty-five per cent disabled in twelve to eighteen months. That there would be some permanent disability and he would not pass plaintiff for a pre-employment physical.

Defendant admits that plaintiff sustained an injury to his back and was temporarily disabled but vigorously denies that there was any permanent disability. Defendant points out that plaintiff's hourly pay was $3.76 at the time of the injury and $4.85 at the time of trial and that plaintiff had worked for this employer some twenty-six months after March of 1969, the date he returned to work. The evidence also shows that plaintiff owns a dump truck and does some hauling in addition to his regular job. In that connection, plaintiff testified that many times he hires other drivers and that his work did not require him to stoop, bend or lift.

Dr. G. Bruce Stephenson, an orthopedist, testified that he released plaintiff to return to regular work on March 10, 1969, and he was of the opinion that plaintiff had no permanent disability.

Dr. D. M. English testified that he examined plaintiff on December 15, 1970, in connection with a phsyical examination as a driver for motor carrier safety regulations. Plaintiff told him that he had a back injury in 1969 but was not having any back trouble as a result of the injury. Dr. English certified him as "qualified when not wearing glasses."

We have made a careful study of all of the cases cited to us by defendant in support of its position, including Commercial Insurance Co. of Newark, New Jersey v. Kempe, 440 S.W.2d 919 (Tex.Civ.App., Dallas, 1969, no writ); Texas Employers' Ins. Ass'n v. Moran, 261 S.W.2d 855 (Tex.Civ. App., Eastland, 1953, dism.); Texas Employers' Insurance Ass'n v. Vineyard, 316 S.W.2d 156 (Tex.Civ.App., Dallas, 1958, no writ); Travelers Insurance Company v. Smith, 435 S.W.2d 248 (Tex.Civ.App., Texarkana, 1968, dism.); and Texas Employers' Insurance Association v. Brown, 408 S.W.2d 931 (Tex.Civ.App., Amarillo, 1966, error ref. n. r. e.). It is not possible to reconcile all of the decisions of the Courts of Civil Appeals passing upon the sufficiency and great weight questions arising as to total and permanent disability findings in compensation cases. As said by this court in Texas Employers Insurance Association v. Smith, 374 S.W.2d 287, 293 (Tex.Civ. App., Beaumont, 1963, no writ):

"The duration and extent of disability resulting from an injury is at best an estimate which must be determined by a jury from all of the pertinent facts before it.

\*   \*   \*   \*   \*   \*

" 'The question of duration of the incapacity of an injured person can never be answered precisely.'

.     .     .     .     .     .

"[I]t is well settled that the fact a claimant continued to work and earn money since his injury is not controlling on the issue of total and permanent disability, but it is evidence to be considered with other facts and circumstances before the jury."

Also, in that opinion it was pointed out that in both *Moran*, supra, and *Vineyard*, supra, the plaintiff had been able to *obtain* new employment as well as *retain* employment. We are aware that all of the cases cited to us cannot be distinguished on this basis, but it is a factor to be considered along with many others.

We have concluded that the jury findings complained of are not clearly wrong or manifestly unjust. The points are overruled.

Defendant has a point of error that the jury answers to Issues 4 and 6 finding total and permanent disability are in irreconcilable conflict with the finding in Issue 12 "[t]hat Plaintiff's average weekly wage earning capacity during the period of such partial incapacity was $150.00."

The court's charge contained an instruction to the jury not to answer Issues 7, 8, 9, 10 and 11 if it answered Issue 6 "permanent" and none of these issues were answered. Issue 7 inquired as to the number of weeks of total incapacity if the jury answered Issue 6 "temporary." Issue 8 asked if there was any partial incapacity. Issue 9 asked about producing cause as to partial incapacity. Issue 10 asked for the beginning date of partial incapacity. Issue 11 asked about the duration of partial incapacity. Issue 12 was not conditioned upon an answer to any other issue and the jury did not violate the court's instructions in answering this issue. The record is silent as to what, if anything, was said by counsel for either party at the time the verdict of the jury was received.

Plaintiff filed a motion to disregard the jury's finding in Issue 12, making the statement that such finding was in irreconcilable conflict with the jury findings in Issues 4 and 6 and asking the trial court to disregard Issue 12 as erroneous and mere surplusage. The final judgment makes the recitation that plaintiff's motion to disregard was granted. The court's charge in this case gave the usual instruction, including the statement that "[a] person, in law, cannot be 'totally incapacitated' and 'partially incapacitated' at the same time."

■ We have concluded that there is not a fatal conflict in this case so as to be reversible error under the law set forth in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991 (1949). Even though it is well settled law in this state that findings of total incapacity and partial incapacity are in irreconcilable conflict, we do not have complete findings as to partial incapacity. We quote the material portion of the *Little Rock Furniture Mfg. Co. Case*, supra, as follows:

"To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. In Pearson v. Doherty, 143 Tex. 64, 70, 183 S.W.2d 453, 456, the court quotes with approval as the test in cases of this kind from the opinion in Howard v. Howard, Tex.Civ.App., 102 S.W.2d 473, 475, writ refused, as follows: 'The test in such [a] case is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant.' This statement was also quoted with approval in Fort Worth & D. C. Ry. Co. v. Welch, Tex.

Civ.App., 154 S.W.2d 896, 898, and Goss v. Longview Hilton Hotel Co., Tex.Civ. App., 183 S.W.2d 998, 999.

"To apply this test, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered. The petitioner cannot meet this test because the jury has not made a finding in its favor on proximate causation. Petitioner is not in a position to complain of this failure because it did not object to the conditional submission of this issue or insist that it be answered. We therefore hold that the verdict does not disclose a fatal conflict."

Applying the rules of that case to our present situation, the jury's answer to Issue 12 is not in itself complete findings of partial incapacity and, by disregarding the conflicting answers in Issues 4 and 6, the trial court did not have the basic issues required to enter a judgment awarding plaintiff recovery under partial incapacity. As stated by the Supreme Court in the *Little Rock Furniture Mfg. Co. Case*, the defendant did not complain to the trial court at the time the jury verdict was returned or insist that the other issues as to partial incapacity be answered. There is no fatal conflict and the point is overruled.

■ Defendant has a point of error that there is no evidence to support the jury's finding plaintiff's medical expenses

to be $750.00. Defendant admits that under the evidence the jury could have awarded the sum of $480.00. We have searched the record and agree with this contention. This portion of the jury verdict is a divisible award and we are authorized to require a remittitur of the amount assessed which lacks support in the record. Texas Employers' Ins. Ass'n v. White, 129 Tex. 659, 107 S.W.2d 360, 361 (1937).

The judgment of the trial court is reformed to allow a recovery of $480.00 for medical expenses and, as reformed, is affirmed.