HARTFORD ACCIDENT & INDEMNITY CO., Appellant,

v.

Wilburn Phil THURMOND et al., Appellees.

No. 920.

Court of Civil Appeals of Texas, Corpus Christi.

May 22, 1975.

Rehearing Denied Aug. 29, 1975.

On Rehearing and Filing of Remittitur June 19, 1975.

G. P. Hardy, III, Michael Terry, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellant.

Ernest Cannon and James E. Robinson, Kronzer, Abraham & Watkins, Houston, for appellees.

## OPINION

NYE, Chief Justice.

This is a workmen's compensation case. Appellee Wilburn Phil Thurmond alleged that on August 13, 1970, while in the course and scope of his employment he suffered a strain or exertion causing harm or damage to his heart, resulting in total and permanent disability. Trial was before a jury and the case submitted on special issues. The jury returned a verdict for Thurmond and judgment was entered by the trial court accordingly. From this judgment, Hartford Accident and Indemnity Company has perfected its appeal contending primarily that there was insufficient evidence, legally and factually, to support a finding of either accidental injury or that the injury was the producing cause of the disability of Thurmond.

Wilburn Phil Thurmond was a man forty-one (41) years of age at the time of the alleged injury. Having no formal education, he had for the most part of his life undertaken the trade of a mechanic. Beginning in 1962, Thurmond went to work for O'Neal Farm Machinery Company. He was employed as a mechanic and worked on heavy equipment. It was quite common for Thurmond to go out to somebody's field and repair their equipment. On occasions, such work required lifting and straining.

On October 8, 1969, while employed by Mr. O'Neal and doing some heavy lifting, Thurmond suffered a sudden onset of severe chest pains, weakness, sweating and faintness. He was immediately treated by Dr. Joe Cannon and admitted to Matagorda General Hospital's Intensive Care Unit. Dr. Cannon diagnosed Thurmond's condition as an acute myocardial infarction, such diagnosis being based on the history of the attack and the results of an electrocardiogram indicating that injury had occurred to a portion of the heart wall. Thurmond was also found to be suffering from arteriosclerotic disease. He remained in the hospital in Bay City for approximately eight (8) days, then was transferred to Houston at which time a pacemaker was strapped to his arm. The pacemaker was removed prior to being released from the hospital in Houston. He returned to the hospital in Bay City October 28, 1969, for convalescence and observation.

Thurmond was released from the hospital October 30, 1969, and returned to light duty work on November 26, 1969. On December 14, 1969, Dr. Cannon became satisfied that Thurmond had recovered from the heart attack of October 8, 1969, so far as the damage done in that heart attack, and that such would no longer disable him. Thurmond returned to his regular duties working for O'Neal on January 14, 1970. From that point until August of 1970, Dr. Cannon continued treating Thurmond which included exercises and control of weight and diet. Also, during this time he was given some medication to control the angina or chest pain that he periodically experienced.

Thurmond was again hospitalized March 13, 1970, for a case of angina pectoris and released March 15, 1970. His treatment was continued. From that point in time, Thurmond continued his usual duties as a mechanic and appeared to be progressing well according to Dr. Cannon although he was still experiencing angina or chest pain occasionally. During the time Thurmond was employed by O'Neal, and on the day in question (August 13, 1970), O'Neal's insurance carrier was Hartford Accident and Indemnity Company.

On the morning of August 13, 1970, Thurmond had begun repairing a tractor in a field belonging to one of O'Neal's customers. The temperature that day was very hot. In order to repair the tractor, Thurmond had to lift a pump, an extremely heavy piece of equipment. In doing so, he had to strain to lift the pump out. At that time, he began having severe chest pains and experienced dizziness. Thurmond stated such pains were so severe, he thought he was going to die. He stopped and laid down under the tractor and rested. Later, he received help in taking the pump off the tractor. He then drove back to Bay City to see Dr. Cannon. While driving back to Bay City, he had trouble keeping conscious and drove off the road several times. Dr. Cannon immediately placed Thurmond in the hospital in Bay City where he remained for several days. He was then referred to a group of cardiologists in Houston and underwent certain tests which included an arteriogram. It was determined that Thurmond was suffering from severe occlusive disease of both the major systems of arteries in the heart. A coronary bypass operation was recommended by Dr. Howell. Such operation had not been advised nor recommended prior to the August 13, 1970 occurrence. This major surgery was performed on August 25, 1970 by Dr. Howell of Houston. Following the surgery in Houston, Thurmond returned to Bay City and was again treated by Dr. Cannon. The effects of this surgery produced acute complications requiring further surgery in April of 1971.

Up until December of 1970, Thurmond remained at home convalescing. He went back to work for Mr. O'Neal in December, 1970, and started doing light work but found he was unable to do the job because of chest pains. Not being able to hold down a job doing any bending stooping or lifting, Thurmond went to work as a security guard.

On July 25, 1972, the Industrial Accident Board awarded Thurmond forty-six (46) weeks of temporary total disability at $49.00 per week, three hundred (300) weeks of permanent partial disability at $12.00 per week, and ordered Hartford Accident and Indemnity to pay Thurmond's medical bills. Hartford filed notice of appeal with the Board and thereafter filed suit in the 130th district court of Matagorda County, Texas.

The jury found in answer to special issues that 1) Thurmond had sustained an injury on August 13, 1970; 2) that such injury was a producing cause of the total disability; 3) that such incapacity began August 13, 1970; and that 4) such incapacity was permanent. The jury further found that the prior heart attack sustained by Thurmond on October 8, 1969, did not contribute to any total incapacity; that such total incapacity was not caused solely by atherosclerosis; and that medical care was reasonably required as a result of such injury in the amount of $9,561.00. Judgment was accordingly entered in favor of Thurmond for $29,134.17.

Hartford appeals and in its first and second points of error claims that the trial court erred in submitting to the jury special issue No. 1 that Thurmond sustained an injury on August 13, 1970 because 1) there was no evidence in the record to raise such issue for a determination by the jury, and that 2) the affirmative answer by the jury is against the great weight and preponderance of the evidence.

Hartford contends that in heart attack cases in order to have a "compensable injury" as defined by Tex.Rev.Civ.Stat.Ann. Art. 8306, Sec. 20 (1967), "heart attack" must be defined as a "myocardial infarction" which in medical terms is by definition, damage and/or death to the heart muscle, and there was no evidence that Thurmond suffered a myocardial infarction or that he suffered damage to the heart muscle as a result of his activity on August 13, 1970. Thurmond, on the other hand, contends that such limitation on compensable harm or damage to the physical structure of the body, in heart attack cases, to mean only objectively confirmable cases of death to tissue or muscles of the heart

would be an unreasonably restrictive and undesirable rule. The question here is: has Thurmond suffered damage or harm to the physical structure of his body (in particular his heart) as shown by the evidence so as to entitle him to compensation?

In considering Hartford's "no evidence" point, it is the duty of this Court to review the evidence in the light most favorable to the jury's verdict and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup. 1965). Thurmond testified that on August 13, 1970, after straining to lift a hydraulic pump from the motor of a tractor, he suffered severe chest pains, nausea, dizziness, sweating and shortness of breath, and that during his trip to the doctor he had trouble keeping his car on the road because of blackouts. In answer to a hypothetical question propounded to Dr. Cannon in his deposition, which was introduced in evidence, his opinion based on reasonable medical probability was that Thurmond did in fact sustain an injury to his body on August 13, 1970, as a result of the activities he was engaged in. Dr. Cannon testified unequivocally that if you define an injury as damage or harm to the physical structure of the body, Thurmond sustained such an injury on August 13, 1970. He testified that such injury was precipitated by his activity and the conditions under which he was pursuing those activities. It also appears from Dr. Cannon's deposition that an electrocardiogram was performed on Thurmond after the August 13, 1970, occurrence and such showed "non-specific T-wave changes". Dr. Cannon stated that the significance of that finding was that it was probably indicative of injury current which is caused by an injury of some kind.

Dr. Cannon further testified that the word "heart attack" is a broad term used by both medical and lay people to describe several possible situations, most frequent of which would be that of myocardial infarction. He stated, however, that acute coronary insufficiency can be referred to as a heart attack and such is not merely a "symptom". Both Dr. Cannon and Dr. Howell agreed that Thurmond at least suffered a coronary insufficiency on August 13, 1970. Dr. Cannon testified that Thurmond was suffering from the disease of arteriosclerosis which existed prior to August 13, 1970, and that such disease was progressive. He also testified that the increase in the work load of the heart (due to Thurmond's activities) had increased at the time in question and that such would cause an increased demand for blood to all areas of the heart whose blood supply was questionable, and would reach that point beyond which it could function properly, and this is usually associated with pain and development of injury currents which can be measured in the electrocardiogram.

Dr. Howell, the expert witness for Hartford, testified that in his opinion Thurmond did not suffer a heart attack and did not suffer damage to his heart on August 13, 1970. However, Dr. Howell did think that Thurmond did suffer from a *severe ischemia* of his myocardium. When asked what is meant by the word "ischemia" Dr. Howell testified as follows:

"Q What is that?

A It's a lack of blood.

Q What is the result of that condition?

A Tissue death.

Q So that when the arteries that supply blood to the heart muscle become blocked or stopped for one reason or another, the blood no longer gets to the muscle and the muscle dies as a result of a lack of the oxygen?

A That's correct."

Dr. Howell (Hartford's expert witness) further testified as follows:

"Q Doctor, excuse me. Let me ask you this question, and ask you to assume these facts with me. Assume that a man is suffering from atherosclerosis of long standing and has a history of a previous myocardial infarction, and in fact has had numerous

occurrences of coronary insufficiency and on a particular day, he is a tractor mechanic, and he goes out on an August morning, obviously a hot morning, and is working on a tractor doing the normal tasks of a tractor mechanic, and experiences angina and coronary insufficiency and then is placed in the hospital, do you have an opinion as to what period of time would have elapsed before that man's condition would revert back to the identical same condition it was immediately prior to his occurrence of angina and coronary insufficiency caused by the activity and demands of his work?

A Well, it depends on—yes, I have an opinion. And depending on the degree of the insufficiency, I don't know that it would revert back completely to his pre-existing state. I mean, it would be a hard measurement, and I think it's something that I couldn't give you a real answer on that, because he may have some degree of muscle damage that's not measured, that can't be measured, so-called 'subendocardial ischemia.' This, of course, he could have death to a small amount of muscle and not be reflected either in electrocardiograms and/or serum enzyme studies, which is the means that we have of detecting any serious muscle damage. But I can't say that the man would revert back completely to his previous state. I mean, it's—I have an opinion, you know, that in this man, I mean from reflection of the studies that were done, that he probably did. But I can't say that he did."

■ It is clear that after reviewing the evidence most favorable to the findings of the jury there appears to be ample evidence to support the submission of special issue No. 1.

■ Hartford's second point is that there was insufficient evidence to support the jury's affirmative answer to special issue No. 1 and therefore, any such affirmative answer is against the great weight and preponderance of the evidence. Such a point requires the Court of Civil Appeals in the exercise of its power, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial if we conclude that the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. We are required to consider all the evidence of probative force tending to prove the existence of the vital facts and the evidence tending to disprove their existence. If the findings by the jury of the existence of the facts (considering all of the evidence) is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, this Court should sustain the point or points of error, reverse the judgment, and order a new trial. Otherwise, this Court should overrule the points and affirm. *In re King's Estate*, 244 S.W.2d 660 (Tex.Sup. 1951), and Calvert "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 359. *Southern Pacific Company v. Stanley*, 473 S.W.2d 52 (Tex.Civ. App.—Corpus Christi 1971, writ ref'd n. r. e.).

Dr. Howell testified that Thurmond did not suffer a myocardial infarction and that there was no damage done on August 13, 1970, but later had to limit his statement in that he could not preclude that no damage was done. Hartford contends that it must be shown that Thurmond suffered damage to his heart muscle and the only way this could be done was to show that Thurmond suffered a "myocardial infarction". With this, we disagree.

■ Article 8306, § 20, Tex.Rev.Civ. Stat.Ann. (1967), provides that "whenever the terms 'injury' or 'personal injury' are used in the Workmen's Compensation Law of this state, such terms shall be construed to mean damage or harm to the physical

structure of the body and such diseases and infection as naturally result therefrom." Damage has been defined as a direct physical injury to a cell, tissue, organ or organ system. *Bailey v. American General Insurance Company*, 154 Tex. 430, 279 S.W.2d 315 (1955). Harm with reference to a living, active structure (as the body is) means essentially that the structure no longer functions as it should. Harm also embraces the impairment of use or control of physical structures directly caused by the accident. *Bailey v. American General Insurance Company*, supra.

■ It is undisputed that a "heart attack" caused by strain or overexertion is an accidental injury to the physical structure of the body within the meaning of the workmen's compensation act. *Baird v. Texas Employers' Insurance Association*, 495 S.W.2d 207 (Tex.Sup.1973); *Insurance Company of North America v. Kneten*, 440 S.W.2d 52 (Tex.Sup.1969); *Aetna Casualty & Surety Company v. Scruggs*, 413 S.W.2d 416 (Tex.Civ.App.—Corpus Christi 1967, no writ). It appears, however, that there are no cases that place the restrictive meaning on "heart attack" as Hartford would have us do, that being that "heart attack" must be defined as myocardial infarction. This is not the test. The test is whether such strain or exertion incurred by the claimant, Thurmond, resulted in an injury. *Baird v. Texas Employers' Insurance Association*, supra; *Insurance Company of North America v. Kneten*, supra; *Hardware Mutual Casualty Company v. Wesbrooks*, 511 S.W.2d 406 (Tex.Civ.App.—Amarillo 1974, no writ). See also *Olson v. Hartford Accident and Indemnity Company*, 477 S.W.2d 859 (Tex.Sup.1972). Such limitation on the term "heart attack" as Hartford would have us apply would be in contravention of the construction the workmen's compensation statutes are to be given. It was stated in *Bailey v. American General Insurance Company*, supra, that "in determining the meaning of the definition of injury contained in the Workmen's Compensation Statute the Court should be guided by the

often announced rule of construction in reference to this statute, that since it is 'remedial', 'if there be any reasonable doubt which may arise in a particular case as to the right of the injured employee to compensation, same should be resolved in favor of such right.' " See also *Jones v. Texas Indemnity Ins. Co.*, 223 S.W.2d 286 (Tex. Civ.App.—El Paso 1949, writ ref'd); *Consolidated Casualty Insurance Company v. Jackson*, 419 S.W.2d 232 (Tex.Civ.App.— Houston [14th Dist.] 1967, writ ref'd n. r. e.).

■ Having reviewed and weighed all of the evidence both for and against the issue as submitted and having given effect to the reasonable inferences that the jury was permitted to make from the evidence, we hold that the jury's findings on this issue are not contrary to the great weight and preponderance of the evidence. Appellants' points one and two are overruled.

Hartford's points of error No. 3 and 4 are that the trial court erred in submitting to the jury special issue No. 2 because there was no evidence to raise such issue for determination by the jury and that the jury's affirmative answer to special issue No. 2 was against the great weight and preponderance of the evidence. Special issue No. 2, together with the jury's answer thereto reads as follows:

"2. Was the injury a producing cause of any total incapacity?

(Answer 'Yes' or 'No') Yes."

■ Under Texas law all that must be shown to establish causation between an injury and disability is that the injury was a producing cause. In other words, it must be a cause that in a natural and continuous sequence, by itself or in connection with other causes or cause, produces disability, and without which the disability would not have occurred. See 62 Tex.Jur.2d Workmen's Compensation § 67.

Hartford argues that the test should be that there must be an opinion from the doctors that there was a medical probability

(not a possibility) that there was a causal connection between the manifestation of the symptoms and the surgery. Dr. Cannon, Thurmond's treating physician, established all of the elements of the tests of producing cause. He stated, in effect, that the injury of August 13, 1970, in a natural and continuous sequence produced the surgery which resulted in disability and that without the injury on said date, the disability would not have occurred, at least when it did. Dr. Cannon testified that the injury on August 13, 1970, was a precipitating factor that made the surgery occur when it did occur and that he would not have had the surgery at the time he did but for the injury. Dr. Cannon was cross-examined by Hartford's attorney as follows:

"Q I believe that you testified that on the morning of August 13, you thought (sic) Mr. Thurmond, and described his condition that he had had a heart attack?

A That is right.

Q All right, and that Mr. Thurmond sustained an injury on August 13, 1970?

A That is right, as defined by Mr. Cannon.

Q Okay, that the surgery was brought about by the injury of August 13, 1970?

A That is right.

Q That this is a permanent condition in Mr. Thurmond as it exists here today?

A That is correct.

Q All right, the need for Dr. Howell's surgery arose out of the occurrence of August 13, 1970?

A That is correct.

Q If it had not been for the occurrence of August 13, 1970, Will Thurmond would not have had the surgery?

A At that time."

It is undisputed that Thurmond was suffering from arteriosclerosis prior to and on the date in question, August 13, 1970, and that such disease was thought to be severe and progressive. Dr. Cannon testified that prior to August 13, 1970 surgery had not been advised nor recommended. During that time prior to August 13, 1970, Dr. Cannon was consulting with Dr. Peterson, a cardiologist in Houston who deemed it unnecessary to do an arteriogram prior to August 13, 1970. Dr. Cannon testified as follows:

"Q Now, as I see your testimony here today, Dr. Cannon, you feel that this need for this surgery done by Dr. Jimmy Howell was made necessary by the occurrence of August 13, 1970?

A That is correct, had it not been for the episode I would not recommend the surgery.

* * * * * *

Q Back to August 13, 1970; if it had not been for that episode out on Mr. McKelvy's farm that we have already talked about, would Mr. Thurmond had (sic) needed the surgery when he did get it on the date that he did have the surgery? Would he have needed it but for that experience? In other words, if he hadn't had that episode and those complaints, would he have had the surgery when he received it?

A No."

 It is clear that there was ample evidence to support the submission of special issue No. 2.

 We next consider whether the evidence was sufficient to support the jury's finding that the injury (of August 13, 1970) was a producing cause of any total incapacity and in doing so we must consider and weigh all of the evidence presented by the record. *Garza v. Alviar*, supra; *Southern Pacific Company v. Stanley*, supra. Dr. Howell testified that the episode of August 13, 1970, was not a producing cause for his surgery and that such episode simply pre-

cipitated him going to the doctor for further evaluation. It should be noted here that Dr. Cannon was the treating physician prior to August 13, 1970, whereas Dr. Howell had not seen Thurmond at all until the time of the operation. On the other hand, Dr. Cannon testified that had it not been for the episode, he would not have recommended the surgery. Although there was conflicting evidence between the doctors, the jury was at liberty to choose whom to believe. Considering all the evidence, including the testimony by all the doctors in light of the rules heretofore laid down, it cannot be said that the jury's affirmative answer to special issue No. 2 was against the great weight and preponderance of the evidence so as to be manifestly unjust. Appellant Hartford's third and fourth points of error are overruled.

In its points of error numbers 5 and 6, Hartford complains that there was no evidence to support the submission of the issue of whether medical care was reasonably required as a result of the injury, and insufficient evidence to support the jury's affirmative answer thereto and, therefore, such answer was against the great weight and preponderance of the evidence. Special issue numbers 8 and 8a with the jury's answer thereto reads as follows:

> "8. Was medical care reasonably required as a result of such injury? Yes
>
> 8a. What was the reasonable cost expended or incurred by Wilburn Thurmond to cure and relieve him from the effects naturally resulting from the injury? $9,561.00"

Hartford contends that the plaintiff has failed to adduce any proof connecting the operation to the lifting of the tractor pump. Article 8306, § 7, provides in part that the insurance carrier shall provide medical care "as may reasonably be required at the time of the injury and at any time thereafter to cure and relieve from the effects naturally resulting from the injury." It must be remembered that where disability results from *medical treatment instituted to cure or relieve an employee from the effects of his injury*, it is regarded as having been proximately caused by the injury and is compensable. *Liberty Mutual Insurance Company v. Pool*, 449 S.W.2d 121 (Tex.Civ. App.—Texarkana 1969, writ ref'd n. r. e.); *Maryland Casualty Company v. Sosa*, 425 S.W.2d 871 (Tex.Civ.App.—San Antonio 1968, 432 S.W.2d 515, writ ref'd n. r. e.). See also *Lopez v. New Amsterdam Casualty Company*, 261 F.2d 659 (C.A. Fifth Cir. 1958).

As Dr. Cannon has previously testified, had it not been for the occurrence of August 13, 1970, he would not have recommended the surgery and if it had not been for that episode, he would not have received the surgery when he received it. The cardiologist, Dr. Peterson with whom he had consulted about Thurmond's condition, never advised nor recommended surgery prior to August 13, 1970. It was not until August 18, 1970 that surgery was recommended and such recommendation was based on the findings of the arteriogram. Dr. Cannon testified that the surgery was brought about by the injury or precipitated by the injury and that the surgery itself was disabling.

The following medical expenses incurred by Thurmond were introduced into evidence without objection and are set out as follows:

| | | |
|---|---|---|
| 1. | Dr. Jimmy F. Howell | $1,500.00 |
| 2. | Dr. Edmond M. Fountain | 20.00 |
| 3. | Taylor Bros. Funeral Home | 94.00 |
| 4. | Dr. William B. Gerecke | 275.00 |
| 5. | Methodist Hospital | 4,341.85 |
| 6. | Dr. Peterson | 600.00 |
| 7. | Dr. Cannon | 2,531.00 |
| | TOTAL | $9,361.85 |

Hartford raises no issue as to the reasonableness of such charges, only that the judgment should be reduced to the maximum justified by the evidence. With this, we

agree. We find evidence in the record to support only the amount of $9,361.85, whereas the jury found $9,561.00, leaving $199.15 unsupported. This portion of the jury verdict is a divisible award and we are authorized to require a remittitur of the amount assessed which lacks support in the record. *Transport Insurance Company v. Kennon*, 485 S.W.2d 598 (Tex.Civ.App.— Beaumont 1972, writ ref'd n. r. e.); *Texas Employers' Ins. Ass'n. v. White*, 107 S.W.2d 360 (Tex.Sup.1937). After reviewing all of the evidence in light of the rules set forth hereinabove, we overrule appellant's points of error numbers 5 and 6. However, we will sustain point 5 in part on condition of a remittitur.

Hartford's seventh point of error was that the trial court abused its discretion in granting the plaintiff a trial amendment or in the alternative, it was error for the trial court to have refused to have protected the objecting defendant by a requested continuance. During voir dire examination by Thurmond's attorney, he stated that Thurmond was entitled to benefits under Hartford's Insurance policy because Thurmond sustained an injury on the job in August of 1970, to which Defendant's attorney objected on the ground that plaintiff's pleading stated that Thurmond suffered a "heart attack" while in the course and scope of his employment without there being any general allegation of "injury" and that plaintiff's attorney should be limited to the allegations of a "heart attack". A trial amendment was offered amending plaintiff's pleading to include the word "injury", which the court granted and overruled defendant's objection thereto. Defendant's attorney then pleaded surprise and moved the court for a continuance.

Rule 66, Texas Rules of Civil Procedure, allows the court to amend the pleadings and suggests that the courts do so freely ". . . when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. . . ." A trial court is vested with broad judicial discretion with regard to permitting trial amendments. Something more than just an objection to the amendment must appear before a reviewing court can say that the trial court has abused this discretion. *Garcia v. Caletka*, 486 S.W.2d 880 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). See also *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605 (1948); *Herrin Transportation Co. v. Parker*, 425 S.W.2d 876 (Tex.Civ.App.— Houston [1st Dist.] 1968, writ ref'd n. r. e.). Although Hartford plead surprise and prejudice, the burden was upon it to satisfy the court that the allowance of such amendment would prejudice it in maintaining its defense on the merits. There appears to be no such showing and no showing of an abuse of discretion. This point is overruled.

Hartford's eighth point of error is that the trial court erred in overruling defendant's motion for mistrial based upon final argument of counsel for Thurmond, "that Hartford had appealed from the award of the Industrial Accident Board." It should be noted, however, that the following evidence was adduced during the cross-examination by defendant's counsel of the Honorable Bert Huebner, County Judge and one of the attorneys who had represented Thurmond at one time.

"Q At what point did Mr. Cannon come into the picture, and explain to the jury, if you would Judge, how he came into the picture?

A All right, I referred the case to Mr. Cannon's law firm after the hearing before the Industrial Accident Board from which Hartford Accident Company appealed."

Such evidence at that point was before the jury. Hartford's counsel failed to object to the answer and failed to move that it be stricken or that the jury be instructed to disregard it. As to the argument of plaintiff's counsel during final argument, it

was stated that Hartford Accident and Indemnity Company was the insurance carrier for O'Neal; that Thurmond's claim was submitted to the Industrial Accident Board; that the board acted in that case; that Hartford would not accept the action taken and an appeal was taken from it. However, there was no mention as to the contents of the award or the type of disability found or monetary recovery.

It has long been the settled rule in Texas that the admission of the award of the Industrial Accident Board into the record is error. *Tanner v. Texas Employers' Insurance Association*, 438 S.W.2d 395 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.); *Federal Underwriters Exchange v. Bickham*, 138 Tex. 128, 157 S.W.2d 356 (1941). However, the question propounded by defendant's attorney, to the Honorable Bert Huebner, and his answer thereto (without objection or request for instruction) were already impressed in the minds of the jurors before final argument. See *Tanner v. Texas Employers' Insurance Association*, supra. Although not approving such jury argument by plaintiff's counsel, under the facts and circumstances in this particular case, what was said did not amount to such a denial of Hartford's rights as was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Rule 434, T.R.C.P. Hartford's point of error No. 8 is overruled.

Hartford's point of error No. 9 was that the trial court erred in overruling defendant's motion for new trial based on the cumulative effects of final arguments by counsel for Thurmond, Mr. Jack Salyer and Mr. Ernest Cannon, such arguments having been so highly prejudicial and inflammatory as to have resulted in Hartford not having received a fair and just deliberation from the jury based upon the evidence. Hartford argues that if it had objected to all of the remarks of Thurmond's attorneys, such continuous objections would have compounded the error and that no instruction from the court could have corrected the cumulative effect of such error. Many sep-arate portions of the arguments made by counsel for Thurmond were set forth in Hartford's brief as prejudicial error. The alleged improper arguments complained about included statements to the effect: that Mr. Hardy's law firm was one of the largest in the world and would do what it was told by Hartford, one of the largest insurance companies in the world; that at the direction of Hartford someone was sent to try to defeat Thurmond out of his little benefits; that they sent Pepper Hardy (Hartford's counsel), a native that was born and raised in Bay City, and that his daddy is a district judge; that Hartford told Hardy to go down there and to do something to get these people out of paying their just debts and not to live up to the contract Thurmond got as an employee for Bill O'Neal; that Hartford put poor Pepper (Hardy) in an impossible situation because we assume that it must have instructed him to come down and talk out of both sides of his mouth in order to get the message forth that Hartford wanted you to believe; and that Hartford is a corporation which is cold, has no soul, heart, morals nor compassion, and what is right does not fit within that mind, because it has no mind; that Thurmond has brought his case to you twelve people for you do have minds, and you do have consciences, and he has asked you to decide this case, and not have a soul-less corporation decide what his rights are and what is fair with him.

Improper jury arguments are usually referred to as one of two types: "curable" or "incurable". A jury argument is "curable" when the harmful effect of the argument can be eliminated by a trial judge's instruction to the jury to disregard what they have just heard. The error is "cured" and rendered harmless by the instruction. On the other hand, an argument may be so inflammatory that its harmfulness could not be eliminated by an objection or an instruction to the jury to disregard it. The prejudicial nature of the argument is so acute that it is "incurable". See *Otis*

*Elevator Company v. Wood*, 436 S.W.2d 324 (Tex.Sup.1968). See also *Aultman v. Dallas Railway & Terminal Co.*, 152 Tex. 509, 260 S.W.2d 596 (1953). If an argument is of a "curable" nature, an objection to it must be promptly made and an instruction requested, or the error is waived. To do otherwise is to allow a party to have two bites at the same apple. A party can gamble upon a favorable verdict, and then if disappointed may afterwards seek to obtain a new trial. *Tanner v. Texas Employers' Insurance Association*, 438 S.W.2d 395 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.). As the Houston Court of Civil Appeals noted in *McNeil v. Current*, 484 S.W.2d 394 (Tex.Civ. App.—Houston [1st Dist.], 1972, writ ref'd n. r. e.), the decision as to whether or not to object to an argument is one of the trial lawyer's "immediate difficult decisions". But if the argument is "incurable", the failure to object does not result in a waiver. Hartford claims that the jury arguments of Thurmond's attorney were of the "incurable" type.

The distinction between "curable" and "incurable" jury arguments has always been one of difficult application. As stated in *Wade v. Texas Employers' Ins. Ass'n.*, 150 Tex. 557, 244 S.W.2d 197 (1951), the distinction might be grounded on the difference between improper jury argument which is inflammatory which is curable while on the other hand, jury argument that brings before the jury information that they do not have and under the law are not supposed to have, is considered "incurable". The *Wade* case concluded by stating "We judge by degree of the vice, not merely the subject matter of the argument."

In *Texas Sand Company v. Shield*, 381 S.W.2d 48 (Tex.Sup.1964), the Supreme Court held that regardless of the type or category in which an argument might fall, the true test is as laid down in *Texas Employers' Ins. Ass'n. v. Haywood*, 153 Tex. 242, 266 S.W.2d 856 (1954). That test has been consistently followed by the Texas Courts since the adoption of Rules 434 and 503, T.R.C.P. In the *Haywood* case, the Supreme Court stated:

"The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict."

See also *Aultman v. Dallas Railway & Terminal Co.*, supra; *Shoppers World v. Villarreal*, 518 S.W.2d 913 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

The attorney for Hartford should have objected the first and every time thereafter that the offensive argument was made. He took no steps to secure appropriate instructions from the trial court. He should have requested that the jury be instructed to disregard the same. We think the argument here, when considered in the light of the entire record, does not present a case of reversible error. This is particularly true in view of the fact that in addition such argument by appellee was provoked and/or invited by opposing counsel. Counsel for Hartford during the trial attempted to portray himself as being "out-gunned" because he was faced with, as counsel for Hartford, "Mr. Cannon from a very fine law firm, Kronzer, Abraham and Watkins, and the County Judge (Bert Huebner), and the District Attorney, (Mr. Jack Salyer)." He also stated to the jury during voir dire examination that he believed his company (Hartford Accident and Indemnity Company) "was right".

Much latitude is allowed counsel in replying to his opponent's argument. Hence, an argument which is provoked or invited by an opponent's argument is not objectionable when directed to the subject matter introduced by the opponent, even though without such provocation it might have been improper. 3 McDonald's, Texas Civil Practice § 13.14 (1970). *Texas Employers' Ins. Ass'n. v. Hicks*, 237 S.W.2d 699 (Tex.Civ.

App.—Amarillo 1951, writ ref'd n. r. e.). Thus, improper argument can be invited by argument of opposing counsel. *Texas Sand Co. v. Shield,* supra; *Tennison v. Letto,* 469 S.W.2d 287 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.). Such was the case here.

We find, under these circumstances, that the nature of the arguments complained of were not such as were reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. In any event, Hartford has not so demonstrated. Rule 434, T.R.C.P.; *Prasek v. Dudley,* 395 S.W.2d 876 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.).

Since we have found that the jury's answer to the issue on medical expenses is not supported by the evidence to the extent of $199.15, it is accordingly ordered that a remittitur of such amount be filed by Thurmond in this Court within fifteen (15) days following the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of such remittitur and affirm the judgment; otherwise, we will be required to reverse and remand for a new trial the entire cause, for the error committed. Rule 440, T.R.C.P.; *Southern Pacific Company v. Stanley,* supra; *Prudential Corporation v. Bazaman,* 512 S.W.2d 85 (Tex.Civ.App.— Corpus Christi 1974, no writ).

All points of error have been carefully considered. The judgment of the trial court is affirmed on the condition that the remittitur in the amount of $199.15 is filed by Thurmond in this Court within fifteen (15) days following the announcement of this decision.

## OPINION ON MOTION FOR REHEARING

The appellant Hartford Accident & Indemnity Company contends on motion for rehearing that reversible error was present when the appellee Thurmond injected into the case the fact that the Industrial Accident Board had made a ruling concerning Thurmond. The appellant contends that the inference is clear, although erroneous, that the Industrial Accident Board had given Thurmond all that he was asking for. The appellant insurance company argues that if reversible error is not presented by the final arguments of plaintiff's counsel in this case, there is no way a workmen's compensation carrier can receive a fair and impartial trial and its right to object is, therefore, defeated. Citing *Federal Underwriters Exchange v. Bickham,* 138 Tex. 128, 157 S.W.2d 356 (1942); *Texas Employers Insurance Association v. Brown,* 226 S.W.2d 233 (Tex.Civ.App.—Amarillo 1949, writ ref'd n. r. e.); *Looney v. Traders General Insurance Company,* 231 S.W.2d 735 (Tex. Civ.App.—Fort Worth 1950, writ ref'd n. r. e.); *Tanner v. Texas Employers Insurance Association,* 438 S.W.2d 395 (Tex.Civ.App.— Beaumont 1969, writ ref'd n. r. e.); *Associated Employers Lloyds v. Landin,* 205 S.W.2d 662 (Tex.Civ.App.—Eastland 1947, writ ref'd n. r. e.).

We have again reviewed the evidence adduced during the trial and reread the arguments made before the jury. When the matter first came out, it was brought out by the insurance company's own witness. The appellant did not object to the answer as not being responsive nor did the appellant ask the court to have such answer stricken from the record and the jury properly instructed. The arguments made by plaintiff's attorney are not to be condoned. We do not wish to be understood as approving the conduct of counsel in placing or attempting to place before the jury either directly or indirectly the facts that an award had been favorable to the claimant. However, upon such jury argument appellant's attorney again refused to object and did not make any of the customary safeguards to reduce the alleged prejudicial effect upon the jury.

We have reread all of the cases cited by the appellant, all but one did not present reversible error. The conditions in all of the cases were more prejudicial, in our opinion, than that which is before this Court in

this case. Particular attention is made to the Supreme Court cases of *Federal Underwriters Exchange v. Bickham*, supra and *Tanner v. Texas Employers Insurance Association*, supra, where the Supreme Court held that there was no reversible error.

We have again considered all of appellant's points in its motion for rehearing and they are overruled.

OPINION ON FILING OF REMITTITUR

This Court suggested that appellee Wilburn Phil Thurmond remit the amount of one hundred ninety-nine dollars and fifteen cents ($199.15) as set forth in our original opinion. The appellee, through his attorneys, has filed a remittitur in the amount suggested and authorized in the opinion of this Court.

Therefore, in accordance with the opinion and the judgment of this Court heretofore rendered, the judgment of the trial court is here reformed to the extent of the amount remitted by appellee Thurmond.

The judgment as herein reformed is now affirmed.